MATKOVICH, APPELLANT, *v.* PENN CENTRAL
TRANSPORTATION COMPANY ET AL., APPELLEES.

[Cite as Matkovich v. Penn Central Transp. Co. (1982),
69 Ohio St. 2d 210.]

(No. 81-358—Decided February 17, 1982.)

*Messrs. Spangenberg, Shibley, Traci & Lancione* and *Mr. Donald P. Traci,* for appellant.

*Messrs. Harrington, Huxley & Smith,* and *Mr. William C. H. Ramage,* for appellee Penn Central Transportation Co.

*Messrs. Haynes & Sontich* and *Mr. Joseph P. Sontich,* for appellee Jennings Manufacturing Co.

CELEBREZZE, C. J.   In this case, the jury found that Penn Central and Jennings were guilty of wanton misconduct. However, the Court of Appeals reversed. Therefore, we must determine whether the jury could have reasonably concluded, based on the evidence, that wanton misconduct existed. We

will consider the conduct of appellees separately—first Penn Central, then Jennings.

The test for determining wanton misconduct was defined in *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114. As stated by the Court of Appeals in the instant case, *Hawkins* created a two-part test for wanton misconduct. First, there is a failure to exercise any care whatsoever by those who owe a duty of care to the appellant. Secondly, this failure occurs under circumstances in which there is great probability that harm will result from the lack of care. The first prong of the test requires that we determine the duty appellees owed appellant, and also the extent of care exercised by appellees. Then, we must consider the nature of the hazard created by the circumstances.

This test was later applied in *Pisel* v. *Baking Co.* (1980), 61 Ohio St. 2d 142. The court concluded that "[t]he defendant in *Hawkins* failed to exercise any care whatsoever." *Id.* at page 144. In *Pisel* the defendant's disabled vehicle obstructed the road as a result of an accident—not intentional conduct. In this emergency situation, the defendant's minimal efforts to warn were sufficient to overcome the allegation of wanton misconduct. However, greater care is required when an act is intentional. In the instant case, the train was in the crossing because of intentional conduct.

## I.

Penn Central contends that the train in the crossing is, in itself, actual notice and an adequate warning. Because the train extended across the road, Penn Central argues that the train preempted the crossing and ordinary care did not require any additional warnings. Furthermore, it argues that the crossing was not exceptionally hazardous and no extra-statutory warnings were required.

There is support for the railroad's position in prior case law. For example, the syllabus of *Reed* v. *Erie Rd. Co.* (1938), 134 Ohio St. 31, states that:

"A railroad company is not liable for the death of an automobile passenger occasioned when the automobile is driven against a moving freight train rightfully occupying its track at a highway crossing in the open country, where it appears that the company had erected a sign in literal compliance

with Section 8852, General Code, that there were other effective signs denoting the presence of the crossing and that the automobile struck the forty-second car back of the locomotive."

Citing *Reed, supra,* the court in *Capelle* v. *Baltimore & Ohio Rd. Co.* (1940), 136 Ohio St. 203, concluded that the train itself was sufficient notice even though the accident occurred after midnight. Paragraph one of the syllabus states that:

"Where a railroad train is rightfully occupying its track at a common grade crossing in the open country, the presence of the train is usually adequate notice to an approaching traveler on the highway that the crossing is preempted, and no additional signs, signals or warnings, other than those specified by law, are ordinarily required of the railroad company."

Similarly, in *Hood* v. *New York, Chicago & St. Louis Rd. Co.* (1957), 166 Ohio St. 529, and *Canterbury* v. *Pennsylvania Rd. Co.* (1952), 158 Ohio St. 68, railroad crossing accidents also occurred at night and the court exonerated the railroad's failure to use lights or other extra-statutory warnings.

The concept of a train serving as notice may have been reasonable decades ago when this standard was formulated. However, we must determine whether the train constituted actual notice of the hazard under the circumstances in this case. The train itself had no reflective tape, and the record reflects that the jury could have reasonably found that no warning devices were used by the railroad at the crossing. Considering the darkness of the night and of the train and the normal rate of speed of today's motor vehicles, appellant may not have had sufficient time to stop and avoid the collision after it became evident to him that the train blocked the road ahead. Therefore, we conclude that the train may not have been perceived at a sufficient distance to serve as notice. Penn Central had a duty to exercise ordinary care to protect the public safety and in this case that duty required giving additional warning of the presence of the train.

The infrequent use of the tracks is another reason for our conclusion that the railroad had an affirmative duty to warn of the train's presence. The record indicates that the tracks were a spur line and seldom used. In comparison, when the railroad was held not liable in *Reed, Capelle, Hood* and *Canterbury,*

*supra,* there is no indication that the tracks were infrequently used. Furthermore, because trains were a more common occurrence when those cases were decided, motorists would more likely anticipate a train in a crossing so that there was less need for a railroad to use other means of warning. In the instant case, appellant lived in the area and was well aware of the crossing, but he also was cognizant that the tracks were rarely used. Penn Central should have foreseen that motorists would not expect a train to be in the crossing because it was an unusual occurrence. Therefore, ordinary care would dictate that Penn Central should have taken some affirmative precautions to warn of the hazard. The Court of Appeals concluded that there was no cross-buck sign, which the railroad is statutorily required to errect at the track,[1] and no other device or signal to warn of the actual presence of the train in the crossing. Penn Central created the hazard by placing the train in the crossing; however, it did nothing to warn motorists of the hazard, even though any of a number of warning devices could have been easily used. This lack of any care at the crossing was more than simple negligence.

Wanton misconduct is a jury question. On these facts, the jury could have reasonably concluded that Penn Central disregarded the safety of motorists and failed to exercise any care whatsoever to motorists. This satisfies the first part of the test for wanton misconduct set forth in *Hawkins, supra,* and also as applied in *Pisel, supra.*

The second prong of the *Hawkins* test is that the failure to exercise care occurs under circumstances in which there is a great probability that harm will result. In its previous deci-

---

[1] R. C. 4955.33 provides, in part, that:

"At all points where its railroad crosses a public road at a common grade, each company shall erect a sign in accordance with the department of transportation manual for uniform traffic control devices, adopted under section 4511.09 of the Revised Code, to give notice of the proximity of the railroad and warn persons to be on the lookout for the locomotive. Any such sign which has been or is erected in accordance with this section may lawfully be continued in use until it is replaced. A company which neglects or refuses to comply with this section is liable in damages for all injuries which occur to persons or property from such neglect or refusal."

In *McCallie* v. *New York Central Rd. Co.* (1969), 23 Ohio App. 2d 152, the court found that a violation of this statute imposed strict liability and contributory negligence is not a defense. However, in the instant case, the missing cross-buck sign was found not to be a proximate cause of the accident.

sions, this court has recognized that "almost every railroad grade crossing involves a substantial risk of danger to those using the highway over such crossing, * * * ." *Hood, supra,* at page 534. Clearly, the dark train on a seldom used crossing at night creates a hazard and there is a great probability of collisions and injuries when no precautions are taken to warn of its presence.[2]

Although we recognize the needs of railroads to preempt crossings to carry on their business, the primary consideration should be the public's safety, especially when the track is an infrequently used spur line. The cost is minimal, in terms of dollars and time, for a railroad to warn with flares, fusees, reflective tape and lanterns. In comparison, the probability of accidents occurring and the gravity of harm are both great. A railroad has a responsibility to exercise ordinary care to prevent accidents, a potential it creates when a train is in a crossing. A jury could have concluded, based on these circumstances, that a great probability of harm could result from the lack of care exercised. Therefore, the second prong of the *Hawkins* test for wanton misconduct is satisfied.

On these facts, it is possible to conclude that the circumstances made the crossing particularly hazardous and required extra-statutorial warnings. According to that rule, because Penn Central had a duty of ordinary care and failed to take any precautions its conduct could constitute wanton misconduct.

However, a general rule of ordinary care in which all circumstances can be considered when determining the standard of care is more appropriate. Therefore, we hold that a railroad has a duty of ordinary care to protect the safety of motorists. This conclusion modifies prior case law which required extra-statutory warnings only when a crossing was particularly hazardous.[3] Under the circumstances in this case, Penn Central had a duty to take affirmative precautions to warn motorists; more than the mere presence of the train in the crossing is required. Because of the serious nature of the hazard created, the jury could have reasonably found the lack of precautions of

---

[2] Over 1,000 persons are killed and 4,000 injured annually by trains at railroad crossings. 24 Trial Lawyers' Guide 305, 311. Presumably, this is on a national basis.

[3] *Capelle, Canterbury, supra.*

any kind constituted wanton misconduct as defined in *Hawkins, supra.*

The Court of Appeals is reversed and the jury verdict reinstated as to Penn Central.

## II.

Our next consideration is whether Jennings' conduct meets the requirements in *Hawkins* for wanton misconduct.

Under the first prong of this test, we must determine the duty Jennings owed appellant and the extent of care exercised by Jennings. Secondly, *Hawkins* requires that there is great probability of harm resulting from the failure to exercise due care.

The Court of Appeals concluded that Jennings was not actively engaged in directing the train across the road. Nor was Jennings responsible for the manner in which the railroad warned motorists of the presence of the train in the crossing. Even if it was determined that Jennings should have had outside lights on its building and failed to do so, that omission did not constitute wanton misconduct. Thus, the train in the crossing created the hazard and whatever duty Jennings had and its conduct are not a basis upon which to predicate wanton misconduct to appellant. Therefore, we find that the conduct of Jennings does not constitute wanton misconduct under the *Hawkins* test. We affirm the Court of Appeals and conclude that the jury's finding of wanton misconduct was against the weight of the evidence and that the trial court erred by failing to sustain the motion notwithstanding the verdict in favor of Jennings.

Accordingly, the judgment of the Court of Appeals is reversed as to Penn Central and affirmed as to Jennings.

*Judgment affirmed in part*
*and reversed in part.*

SWEENEY, LOCHER and C. BROWN, JJ., concur.

HOLMES and KRUPANSKY, JJ., concur in part and dissent in part.

W. BROWN, J., concurs in paragraph one of the syllabus.

CLIFFORD F. BROWN, J., concurring. Rules of tort law

should be applied in the same manner to all corporations and persons. Railroad companies should not be the objects of special privileges. In departing from prior law, the court today takes a proper step in recognizing this concept of equal justice before the law. For a discussion of the flexibility of *stare decisis*, see the concurring opinion in *Shroades* v. *Rental Homes* (1981), 68 Ohio St. 2d 20, and the dissenting opinion in *Bonkowsky* v. *Bonkowsky* (1982), 69 Ohio St. 2d 152, 164-165.

I concur wholeheartedly in the judgment.

HOLMES, J., concurring in part and dissenting in part.

I concur in that part of the court's judgment which affirms the Court of Appeals' finding that the conduct of Jennings Manufacturing Company did not constitute wanton misconduct.

I dissent from that part of the judgment of this court which holds that Penn Central was guilty of wanton misconduct and from the syllabus law which departs radically from prior applicable law as pronounced by this court.

There has not been shown a reasonable basis for departing from the principle that, absent peculiar hazards, there is no extraordinary duty to provide signs, signals or warnings other than those specified by law, and that the presence of the train on the track is adequate notice to the approaching traveler on the highway that the crossing is preempted. *Reed* v. *Erie Rd. Co.* (1938), 134 Ohio St. 31; *Capelle* v. *Baltimore & Ohio Rd. Co.* (1940), 136 Ohio St. 203; and *Hood* v. *New York, Chicago & St. Louis Rd. Co.* (1957), 166 Ohio St. 529.

The effect of the law as pronounced by the court in this case will require all railroads to provide some warning device at every track crossing every road in Ohio. This means that the railroads will be required to stop every train at every crossing to allow a flagman to wave his signal light—an obvious improbability for high-speed passenger and freight trains attempting to maintain a schedule. The other possibility would be for the railroads to provide automatic warning signals, or flasher devices, at every track crossing a roadway in Ohio—a tremendous expense for this already down-at-the-heels transportation industry.

Absent the majority's juristic legislation, the law of Ohio

would not dictate any special duty on Penn Central here. If the current situation relative to the need for marking trains on highway crossings needs remedial action, this is more properly a subject for the General Assembly.

KRUPANSKY, J., concurs in the foregoing concurring and dissenting opinion.

KRUPANSKY, J., concurring in part and dissenting in part. I concur with the opinion of Justice Holmes, but I would add the following:

To sustain a jury finding of wanton misconduct, there must be sufficient evidence showing the failure to exercise any care whatsoever, *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114. The facts in this case, however, do not show a *total* lack of care on the part of Penn Central. Quite the contrary, there was evidence presented that employees of Penn Central had placed fusees on each side of the crossing, and that before proceeding across the track, the train blew its whistle and sounded its bell. There had also been erected a yellow luminescent sign, visible at night, some 220 feet before the crossing to warn travelers of the possibility of a train ahead.

It must be remembered the motorist himself is held to a duty of ordinary care. Appellant, however, testified that even though he was well aware of the presence of the tracks and the sign, he nevertheless proceeded at a speed of 30 to 35 miles per hour, in complete disregard of the sign and tracks ahead. Appellant failed in his duty to travel at a speed which would have enabled him to stop within the assured clear distance ahead. R. C. 4511.21. The presence of the train on the crossing is, absent unusually dangerous circumstances, sufficient warning to the motorist that the crossing is blocked. Accordingly, once a railroad crossing has been preempted by a train, crossbucks or extra-statutory precautions have not been required for the exercise of ordinary care, unless the evidence indicates the crossing is peculiarly hazardous. See, *e.g., Capelle* v. *Baltimore & Ohio Rd. Co.* (1940), 136 Ohio St. 203. The jury specifically found, however, the absence of crossbucks at the crossing was not a proximate cause of the accident.

The evidence does not show anything unusually dangerous

about the crossing itself such as would impose an extraordinary duty on Penn Central to take precautions beyond those statutorily required. The crossing was located on a straight stretch of the road where there was no appreciable obstructing grade, and there was nothing peculiarly hazardous in the way the crossing had been constructed. Furthermore, there is nothing extraordinary in the presence of darkness at the crossing at 2:00 a.m. when the accident occurred; nor does darkness in and of itself denote a peculiar or unusual hazard. The presence of darkness at the crossing is not sufficient to take this case out of the category of simple negligence and place it into the category of wanton misconduct which requires a finding of failure to safeguard against *peculiar* hazards.

This case is not based on simple negligence. Appellant alleged wanton misconduct on the part of appellees. The majority opinion confuses the standard for a finding of *simple negligence,* which requires the failure to exercise *ordinary care,* and the standard for a finding of *wanton misconduct,* which requires the failure to exercise *care beyond the ordinary because of unusually hazardous circumstances.*

I fail to see how the majority holds that ordinary care now requires extra-statutory warnings, while at the same time finding Penn Central guilty of wanton misconduct due to the alleged absence of extra-statutory precautions.

According to the majority, *"ordinary care* would dictate that Penn Central should have taken some affirmative precautions to warn of the hazard. * * * [A] general rule of *ordinary care* in which all circumstances can be considered when determining the standard of care is more appropriate. Therefore, we hold that a railroad has a duty of *ordinary care* to protect the safety of motorists. This conclusion modifies prior case law which required extra-statutory warnings only when a crossing was particularly hazardous." (Emphasis added.) If ordinary care now requires extra-statutory warnings, then Penn Central's alleged failure to provide extra-statutory warnings would constitute simple negligence, not wanton misconduct.

I realize this accident in which appellant lost his arm perhaps generates sympathy, and I am not immune from feeling compassion for this individual. We must, however, in deciding cases, set our emotions aside and apply the law to the facts of

the case before us. The fact is appellant in this case failed to exercise ordinary care for his own safety. According to his testimony, he failed to heed the warnings which he admitted were present, namely, the luminescent sign and the presence of the train on the tracks. Undoubtedly, it was for this reason the jury found the absence of crossbucks was not a proximate cause of appellant's accident. Given such circumstances, what more could Penn Central do short of acting as an insurer for motorists who fail to be vigilant for their own safety?

HOLMES, J., concurs in the foregoing concurring and dissenting opinion.