812 F.2d 1407
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Daniel L. MONNIN, Plaintiff-Appellant,
v.
CONSOLIDATED RAIL CORPORATION, Defendant-Appellee.
 No. 85-3722 and 86-3052.
 United States Court of Appeals, Sixth Circuit.
 Jan. 16, 1987.
 
 Before KRUPANSKY, NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff in this personal injury action appeals from a judgment entered against him on a jury verdict in favor of the defendant railroad. The plaintiff makes five assignments of error. First, the plaintiff contends that the trial court improperly restricted the questioning of the venire during voir dire regarding any possibility of bias in favor of defendant Conrail because of the government's majority ownership of the railroad. Second, the plaintiff alleges a failure of the district court to investigate incidents of "juror misconduct." Third, the plaintiff claims error existed in the court's instructions on the standard of care owed by railroads to motorists, on contributory negligence, and on superseding cause. Fourth, the plaintiff argues that the verdict was against the weight of the evidence. Fifth, plaintiff's counsel challenges the court's imposition of sanctions pursuant to Rule 11, Fed.R.Civ.Proc. Finding none of these assignments of error well taken, we shall affirm the judgment of the district court.
 
 
 2
 The plaintiff brought suit against Conrail for injuries suffered when an automobile in which the plaintiff was riding ran into the side of a Conrail train at a crossing in Darke County, Ohio. The plaintiff asserted that Conrail was negligent in blocking the crossing at night without giving motorists adequate warning.
 
 
 3
 The jury could reasonably have found that on the night of the accident, January 28, 1983, the Conrail train was heading west toward Ansonia, Ohio. The train was approximately one and one-third miles long. Because of switching operations being conducted on the same track west of Ansonia, the train was stopped just east of the Main Street crossing in Ansonia; the Beam Road crossing, one and one-tenth miles east of Main Street, was blocked as a result.
 
 
 4
 The Beam Road crossing has parallel tracks running at a 90 degree angle to the road. The view to both the east and west is unobstructed for vehicular traffic approaching the crossing from the south, as the plaintiff's car was. There are no lights or gates at the crossing, but there is an advance warning sign indicating the presence of a railroad crossing ahead, and there is a standard cross-buck sign at the crossing itself. No other warning or protection is required by statute. The plaintiff's expert testified that the signs would be visible in the headlights of an approaching car.
 
 
 5
 The accident occurred shortly before 10:00 p.m., when it was extremely dark. The cars of the train were not reflectorized or lighted in any manner, no flares had been set, and no flagman was stationed at the crossing. The plaintiff's accident reconstruction expert testified that the train was either stopped or moving very slowly when the accident occurred. The train had been cleared to start up again a few minutes before railroad employees learned of the accident.
 
 
 6
 The plaintiff and the other occupant of the northbound automobile were both familiar with the Beam Road crossing, and had actually discussed the need for slowing down as they approached the crossing. The automobile was not stopped in time, however, and it hit the side of the ninth-to-last car of the train. The plaintiff's companion was killed, and the plaintiff was injured. This lawsuit followed.
 
 
 7
 After a month-long trial, the jury returned a verdict for Conrail. The jury stated, in response to a special interrogatory, that Conrail had not been negligent. The district court denied motions by the plaintiff to vacate the judgment, to declare a mistrial, or to order a new trial. The plaintiff appealed.
 
 
 8
 I. Voir Dire Regarding Government Ownership of the Defendant
 
 
 9
 During voir dire plaintiff's counsel questioned the
 
 
 10
 prospective jurors as follows:
 
 
 11
 "[T]he federal government owns, as I understand it,
 
 
 12
 something like 85 percent of the corporate stock on Conrail,
 
 
 13
 and I believe the other fifteen percent is owned publicly by
 
 
 14
 a miscellaneous group of investors.
 
 
 15
 Would the fact that the government owns the majority of the
 
 
 16
 stock in the corporation Conrail or Consolidated
 
 Rail Corporation tend to bother you in
 
 17
 any way, shape or form
 
 
 18
 concerning your verdict?
 
 
 19
 (No response.)"
 
 
 20
 After more questioning, plaintiff's counsel sought to ask
 
 
 21
 whether any member of the panel thought that "under no
 
 
 22
 circumstances should a private taxpayer sue the government."
 
 
 23
 The court sustained an objection to this question, and the
 
 
 24
 plaintiff contends the court erred in so doing.
 
 
 25
 The scope of questions to be asked on voir dire is
 
 
 26
 "generally a matter addressed to the sound discretion of the
 
 
 27
 court." Eisenhauer v. Burger, 431 F.2d 833, 836 (6th
 
 
 28
 Cir.1970). There was no abuse of discretion here. The
 
 
 29
 question as to which the objection was sustained was clearly
 
 
 30
 repetitious, whether or not it would have been objectionable
 
 
 31
 otherwise.
 
 II. Alleged Juror Misconduct
 
 32
 During a court recess, two jurors were overheard talking about the case; one said something to the effect that "this" is really going to cost the taxpayers. After the trial one of the jurors telephoned the chairman of the university department in which the plaintiff's accident reconstruction expert worked. The juror praised the expert's testimony in some respects, but stated that the testimony went beyond the witness' area of expertise. The plaintiff contends that these incidents indicate juror bias, and that the court therefore had a duty to question the jurors and to order a new trial if the existence of bias was confirmed.
 
 
 33
 The statements in question do not impress us as sufficient evidence of bias to require further inquiry. The context of the juror's statement about "this" costing the taxpayers is unclear; month-long trials are not inexpensive, and it is by no means certain that the referent of the pronoun was a prospective judgment in favor of the plaintiff. Even if it was, a belief that a judgment for the plaintiff would be paid from the public purse does not show that the juror could not be true to his oath or that he had lied when he indicated by his silence during the voir dire that the government's ownership interest in Conrail would not bother him concerning his verdict. Trial courts ought not lightly undertake to interrogate jurors after a verdict has been returned, and we do not believe that the trial court erred in declining to make inquiry here.
 
 
 34
 As to the telephone call regarding the expert testimony--a call made after the jurors had been told they were free to discuss the case with anyone--we are at a loss to understand how the juror's analysis of the testimony, whether right or wrong, can be thought to have tainted the verdict. The district court did not err in declining to explore the thought processes of individual members of the jury.
 
 III. Jury Instructions
 
 35
 The plaintiff's third claim of error is that the district court improperly charged the jury on contributory negligence and superseding cause and incorrectly instructed the jury as to the duty of care owed by the defendant. The plaintiff further notes that "the Defendant asserted Plaintiff's burden was to establish that the crossing was ultra-hazardous before proof of negligence could be shown."
 
 
 36
 It is true that in Matkovich v. Penn Central Transportation Co., 69 Ohio St.2d 210, 431 N.E.2d 652 (1982), a crossing case in which the jury returned a verdict for the plaintiff, the Supreme Court of Ohio held, in its first syllabus, that "[a] railroad has a duty of ordinary care to protect the safety of motorists." It is also true, however, that in the present case the court clearly instructed the jury that the defendant had a duty of ordinary care; however broadly the first syllabus in Matkovich may sweep, there is no basis for contending that the charge given here failed to comply with it. We are aware of no improper exclusion of evidence that Conrail failed to exercise ordinary care, and the plaintiff has cited none. Whether the trial court erred in charging on contributory negligence and superseding cause (charges predicated in part on the conclusion that it would be permissible for the jury to find that the plaintiff had been the driver of the car and not, as he claimed, the passenger) is a question we need not reach; the jury having found that the plaintiff had failed to prove Conrail negligent, any instructional error on Conrail's affirmative defenses was harmless.
 
 IV. Weight of the Evidence
 
 37
 Next, the plaintiff contends that the verdict was against the weight of the evidence. The plaintiff relies primarily on Matkovich, but, as we have said, that was a case where the jury returned a verdict for the plaintiff; it was not a case where the trial court was held to have erred in refusing to set aside a verdict for the defendant. The plaintiff's argument that the evidence in the case at bar "established [a] prima facie case under Matkovich" seems rather beside the point, the trial court having allowed this case to go to the jury. Matkovich certainly does not suggest that the plaintiff in the instant case was entitled to judgment as a matter of law on the liability issue, nor does Matkovich suggest that the plaintiff is entitled to a new trial here after his failure to persuade the jury that Conrail was negligent. What Matkovich may suggest, on the contrary, is that the plaintiff received more than his due when the trial court instructed the jury that if it awarded compensatory damages, it could award punitive damages as well if it found that Conrail had acted (or failed to act) "with actual malice," either in the form of express ill-will, recklessness, or willful or wanton misconduct. Although the Ohio Supreme Court concluded in Matkovich that the jury in that case could reasonably have concluded that there was wanton misconduct, the evidence established not only that the railroad had failed to maintain the statutorily required cross-buck sign at the crossing, but also that the spur tracks in question were used so infrequently that the railroad was charged with knowledge that motorists would not expect to find a train on them. That was the context in which the Ohio Supreme Court held, in the second syllabus of Matkovich, that "the lack of precautions of any kind at a railroad crossing can constitute wanton misconduct by the railroad" (emphasis supplied.) In the instant case the jury could not reasonably have found a lack of precautions "of any kind;" the required cross-buck sign was present, and we are not aware of any indication that the tracks were so infrequently used that Conrail should have foreseen that motorists would not expect to find a train in the crossing.
 
 V. Rule 11 Sanctions
 
 38
 Finally, plaintiff's counsel challenges the district court's imposition of Rule 11 sanctions for the filing of discovery motions and motions for summary judgment that the court found "wholly and totally frivolous." We are not persuaded that the district court was wrong.
 
 
 39
 The judgment of the district court is AFFIRMED.