946 F.2d 895
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard D. LEICHNER, Plaintiff-Appellant,
v.
NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellee.
 No. 91-3295.
 United States Court of Appeals, Sixth Circuit.
 Oct. 7, 1991.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and JOINER, Senior District Judge*.
 PER CURIAM.
 
 
 1
 In this diversity action, plaintiff Ricky Leichner appeals the summary judgment for defendant Norfolk and Western Railway ("N & W"). The issue in this case is whether the district court erred in granting defendant's motion for summary judgment on the ground that "as a matter of law ... the plaintiff's negligence exceeded that of the defendant," barring recovery for personal injury under Ohio Revised Code § 2315.19(A)(1) (comparative negligence law). For the reasons that follow, we reverse.
 
 I.
 
 2
 Plaintiff was employed by Detzel Construction Company ("Detzel") at the time of the accident giving rise to his action. Detzel had a contract to repair concrete support columns and concrete parapet walls on a railroad bridge located near the Ohio State Fairgrounds in Columbus, Ohio. The contract was with defendant N & W which owned and operated the bridge. Plaintiff operated a chipper and a small portable jackhammer which he used to remove old deteriorated concrete.
 
 
 3
 Plaintiff had been working on the bridge for four days at the time of the accident. The day of the accident, September 8, 1987, was the first day that plaintiff worked on the top of the bridge near the railroad tracks. He was on the west side of the bridge approximately twenty feet above ground. On the day of the accident, plaintiff witnessed a train pass and workers standing out of its way. Plaintiff continued to work because at that time he was not near the tracks. Plaintiff stated that he did not see anyone warning the workers, but he was aware that a man with a tie, later determined to be Walter Queen, was responsible for warning workers about oncoming trains.
 
 
 4
 Defendant N & W took certain safety precautions to insure the safety of the workers from the trains. Approximately ten minutes before the train reached the construction location, the N & W flag man, Walter Queen, would receive a radio communication from the train engineer that the train was approaching. Queen's duties required that he then walk down the track ahead of the train and in the same direction of travel as the train, yelling and waving to all persons in the area of the track to clear out of the way. According to Queen, the workers on the parapet walls and underneath the bridge were not in the immediate track area, but were "waved off" by him as an extra precaution. The workers in the immediate track area would step back from the tracks and wait for the train to pass. As the train passed, the engineer would reduce the train's speed to ten miles per hour or less, blow the train's whistle intermittently, ring the train's bell (located on the first locomotive) continuously, and leave the train's headlight on bright beam.
 
 
 5
 Due to the construction, the workers were required to wear a hard hat, safety goggles, and ear protection. Plaintiff claims that he was wearing this safety equipment at the time of the accident, and that this equipment made it harder to see and hear. Queen was aware that plaintiff was wearing ear protection and a hard hat.
 
 
 6
 During the afternoon of September 8, 1987, Queen received a signal from the engineer of an N & W train requesting permission to pass through the construction site. According to Queen's deposition, he went through the work area telling workers to stand clear. He testified at his deposition that "Mr. Leichner was over to the south side of the parapet wall and there was [sic] two other men with him. I hollered over and told them that the train was coming.... I know I made a motion to which track...." However, plaintiff claims that he was working by himself on the south side of the wall and that he never saw Queen or heard a warning. Testimony indicated that Queen did not have a flag or any other signaling device at the time of the accident.
 
 
 7
 The affidavit of Jerome Wesley states that Queen cleared the track and that "[a]ll persons stepped away from the track area...." The affidavits of Queen and Larry Cavanaugh recite the same language verbatim. However, plaintiff and the two other workers allegedly with him were on the parapet wall of the bridge and would have nowhere to step away to. The record is silent as to whether plaintiff or the two men with him gave any indication that they acknowledged Queen's warning. The only evidence on this point is plaintiff's testimony that he did not receive any warning. The two men allegedly with plaintiff were apparently not deposed, and, according to plaintiff, he was by himself on the bridge.
 
 
 8
 Apparently, after Queen had passed over the bridge, plaintiff was "waved" by Jimmy White over to scaffolding which was to his south. Plaintiff met White who was standing on scaffolding beside the bridge and who wanted plaintiff to loosen an air hose on the tracks. White pointed at the hose, and plaintiff read White's lips in order to understand what White wanted. During these instructions White and plaintiff were "face-to-face." Plaintiff then followed his instructions and went to loosen the hose. He did not look up the tracks for the train, and he testified on deposition that he did not hear a whistle or a bell. He saw the train after he bent down to loosen the hose at which time the train was within five feet of him. He was struck by the train before he could move and suffered injury.
 
 
 9
 If plaintiff had looked up the tracks, his vision of the train would not have been blocked, and he testified that he saw no reason he could not have seen the train if he had looked. However, he also testified that his goggles were dusty.
 
 
 10
 Queen's testimony states that there were no loud noises or jackhammers working at the time he warned the workers, including plaintiff, of the oncoming train. However, plaintiff testified that the compressors which generate the jackhammers "can deafen you" even when the jackhammers are not in operation.
 
 II.
 A.
 
 11
 This court reviews a grant of summary judgment de novo. Storer Communications, Inc. v. National Ass'n of Broadcast Employees & Technicians, 854 F.2d 144, 146 (6th Cir.1988). Summary judgment is appropriate if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). First this court must ask if there is a material fact in dispute. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The second requirement is that the dispute be genuine. That is, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party." Id. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249-50.
 
 
 12
 The moving party has the initial burden "of showing that there is no genuine issue of fact." Id. at 256. If this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)) (emphasis added); Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988).
 
 B.
 
 13
 Plaintiff's only affirmative evidence is his affidavit and deposition. However, such evidence may be enough to set forth specific facts showing that there is a genuine issue of material fact for trial. The district court erroneously stated that "[s]uch evidence is in and of itself insufficient to create a material issue of fact." The court cited Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986). Anderson quotes Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 512 (1984), stating that "discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion." In Anderson, the plaintiff could not defeat a motion for summary judgment where the defendant's state of mind was at issue merely by saying that the jury might find that the defendant was lying. Anderson, 477 U.S. at 256. Anderson does not support the conclusion that plaintiff's own testimony, which is affirmative evidence, is not enough to defeat a motion for summary judgment. The affirmative evidence which plaintiff presents is to be "believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.
 
 
 14
 Plaintiff has articulated specific facts sufficient to show that there is a genuine issue of material fact. However, the district court found that as a matter of law plaintiff's negligence exceeded defendant's negligence. Ohio's comparative negligence law bars a plaintiff from recovering damages in a negligence action if the plaintiff's negligence was greater than that of the defendant. Ohio Revised Code § 2315.19(A)(2). The district court granted summary judgment on comparative negligence grounds without addressing the defendant's initial argument that defendant was not negligent. Defendant's claim that "the court also concluded that there was no evidence of N & W negligence" is incorrect. See Defendants' Brief at 9.
 
 
 15
 The record, taken as a whole, demonstrates that there is a genuine issue as to whose negligence was greater. First, as to defendant N & W's negligence, Queen knew of the ear protection worn by the plaintiff and the other employees. In fact, plaintiff could not hear very well. Plaintiff testified that White had to have plaintiff close to him in order to pantomime instructions to plaintiff to loosen the hose on the tracks, and the evidence indicates that the construction area was noisy. In spite of the noisy conditions, Queen testified that he was twenty feet away from plaintiff when he allegedly warned him of the approaching train. Furthermore, the record offers little or no evidence that plaintiff received a warning.
 
 
 16
 The only evidence in the record that plaintiff actually received Queen's warning is the verbatim language in the affidavits of Wesley, Queen, and Cavanaugh which state that all persons stepped away from the area. However, being on the wall, plaintiff could not have stepped back. This contradiction, along with plaintiff's testimony that he was not warned, indicates that Queen may have attempted to say something to plaintiff, but that Queen received no response or any indication that plaintiff heard his message or even saw him. This lack of response, along with the fact that Queen allegedly warned plaintiff from twenty feet away in a noisy area, when the plaintiff was wearing ear protection, raises a genuine issue of material fact as to whether Queen failed to adequately warn plaintiff. A verbal warning to a deaf man is no warning, and such action would be negligent if the person having a duty to warn knew of the hearing impairment. As earlier stated, the deposition testimony was that Queen did not have a flag or any other signaling device at the time of the accident.
 
 
 17
 Second, as to the issue of whether defendant N & W had a duty to warn, defendant has not argued to the contrary. Under Ohio law, "[w]hen the owner or occupier of premises engages an independent contractor to do work thereon, an employee of the contractor, while executing the work, is impliedly there at the request of the owner and is an invitee toward whom the owner owes a duty of exercising ordinary care." American Steel & Wire Co. v. Sieraski, 119 F.2d 709, 709 (6th Cir.1941) (quoting the syllabus of Hozian v. Crucible Steel Casting Co., 132 Ohio St. 453, 9 N.E.2d 143 (1937)); see also Ohio Rev.Code Ann. § 4101.01 et seq. (requiring employers to do everything "reasonably necessary to protect the life, health, safety and welfare of" frequenters). But see Schwarz v. General Elec. Realty Co., 163 Ohio St. 354, 126 N.E.2d 906 (1955) (where independent contractor has control and supervision, then a warning to the contractor meets the owner's obligation); Wellman v. East Ohio Gas Co., 160 Ohio St. 103, 113 N.E.2d 629 (1953). Defendant owed a duty to warn the workers of oncoming trains because (1) defendant was in a superior position to know when the trains were coming, see Jackson v. Kings Island, 58 Ohio St.2d 357, 390 N.E.2d 810 (1979); and (2) defendant had assumed this duty by previously warning the workers of oncoming trains using an individual whose job included the warning of the workers. Plaintiff knew he was supposed to be warned, and there is a genuine issue of material fact as to whether or not he was warned in any meaningful way.
 
 
 18
 Thus, plaintiff has alleged facts sufficient to show that there is a genuine issue of material fact as to defendant's negligence. As for plaintiff's own negligence, given the fact that he knew he was supposed to be warned before a train passed through the area, it cannot be said that as a matter of law his negligence was greater than that of the defendant. Cf. Matkovich v. Penn Central Transp. Co., 69 Ohio St.2d 210, 431 N.E.2d 652 (1982) (the train itself was not an adequate warning at a crossing at night). In other words, there is a genuine issue as to the material fact of whether the negligence of plaintiff in failing to look for the approaching train exceeded the negligence of the defendant in failing to meaningfully warn plaintiff. Therefore, the district court erred in granting defendant's motion for summary judgment.
 
 III.
 
 19
 For the reasons stated, we REVERSE the summary judgment granted to the defendant by the district court and REMAND for further proceedings consistent with this opinion. However, we do not in any way suggest or imply what the eventual outcome of this case should be.
 
 
 
 *
 Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation