OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Carpenter et al., Appellees, v. Consolidated Rail Corporation,
Appellant.
[Cite as Carpenter v. Consolidated Rail Corp. (1994),     Ohio
St.3d    .]
Torts -- Negligence -- Federal Railroad Safety Act and Highway
     Safety Act do not preempt state law over negligence suits
     alleging a failure to maintain adequate grade crossing
     warning devices.
     (Nos. 92-324 and 92-652 -- Submitted December 7, 1993 --
Decided May 11, 1994.)
     Appeal from and Certified by the Court of Appeals for
Mahoning County, No. 90 C.A. 116.
     The facts of this case are not disputed.  On July 16,
1987, a truck operated by plaintiff-appellee, Gerald Carpenter,
collided with a work train owned and operated by defendant-
appellant, Consolidated Rail Corporation ("Conrail").  The
incident occurred at Moultrie, Ohio, where Conrail's track
intersects S.R. 172.  Warning of the grade crossing was
provided by an advance warning sign with yellow flashing
beacons, pavement markings and railroad crossbucks.  There were
no automatic lights or gates at the time of the collision.
However, approximately four months prior to the accident, the
Ohio Department of Transportation ("ODOT") notified Conrail by
letter that the Moultrie crossing had been programmed for the
installation of automatic light signals and roadway gates.
ODOT subsequently authorized Conrail to proceed with the
project according to specifications contained in the Manual on
Uniform Traffic Control Devices for Streets and Highways.  The
improvements had not yet been completed at the time of the
collision.
     Carpenter sued Conrail alleging that Conrail was negligent
by failing to adequately warn oncoming motorists of the
crossing.  Carpenter did not allege that the train was
negligently operated.  Conrail moved for summary judgment on
the basis that the Federal Railroad Safety Act of 1970 ("FRSA")
(Section 421 et seq., Title 45, U.S. Code) and the Highway
Safety Act of 1973 (Section 401 et seq., Title 23, U.S. Code)
preempted state law with respect to crossing warning devices.

The trial court agreed and entered summary judgment against Carpenter.  The court of appeals reversed and remanded for further proceedings.

The appellate court, finding its judgment to be in conflict with the judgments of the Court of Appeals for Franklin County in Barger v. Chesapeake & Ohio Ry. Co. (1990), 70 Ohio App.3d 307, 590 N.E.2d 1369, and the Court of Appeals for Miami County in Anderson v. CSX Transp. Co. (Aug. 2, 1991), Miami App. No. 90 C.A. 41, unreported, certified the record of the case to this court for review and final determination (case No. 92-652).  The cause is also before this court pursuant to the allowance of a motion to certify the record (case No. 92-324).  The two appeals have been consolidated.

Martin S. Goldberg Co., L.P.A., and Steven M. Goldberg, for appellees.

Vogelgesang, Howes, Lindamood & Brunn, Philip E. Howes and Thomas R. Himmelspach, for appellant.

Lee I. Fisher, Attorney General, and Nancy J. Miller, Deputy Chief Counsel, urging affirmance for amicus curiae, state of Ohio.

Moyer, C.J.    This case presents but a single issue: whether the Federal Railroad Safety Act and the Highway Safety Act preempt state law over negligence suits alleging a failure to maintain adequate grade crossing warning devices.  Based upon the United States Supreme Court's decision in CSX Transp., Inc. v. Easterwood (1993), 507 U.S.     , 113 S.Ct. 1732, 123 L.Ed.2d 387, and our own interpretation of the legislation at issue, we find no preemption and therefore affirm the judgment of the court of appeals.

We recently addressed the preemptive effect of the Federal Railroad Safety Act in the context of a hazardous chemical spill.  In re Miamisburg Train Derailment Litigation (1994), 68 Ohio St.3d 255, 626 N.E.2d 85.  In this case we will specifically address the issue of a railroad's liability for failure to install warning devices.

In 1970, Congress enacted the Federal Railroad Safety Act for the express purpose of promoting "safety in all areas of railroad operations and [reducing] railroad-related accidents ***."  Section 421, Title 45, U.S. Code.  The Act directed the United States Secretary of Transportation to conduct a comprehensive study of railroad grade crossings and report his findings to the President for transmittal to Congress.  Section 433, Title 45, U.S. Code.  The Secretary was also vested with rule-making authority to carry out the purposes of the Act. Section 431(a), Title 45, U.S. Code.

Thereafter, the Secretary submitted annual reports concerning crossing safety and Congress responded by passing the Highway Safety Act of 1973.  This Act makes federal funds available to states to upgrade railway crossings.  The states are required to inventory crossings requiring safety-related improvements and devise a schedule for implementing the projects.  Section 130(d), Title 23, U.S. Code.  In addition, each state must submit an annual report to the Secretary detailing its progress.  Section 130(g), Title 23, U.S. Code.

The Secretary, by regulations, has imposed further

conditions on the state's use of federal funds.  Section 924.5, Title 23, C.F.R. requires states to implement a highway safety improvement program.  As part of this program, states are required to prioritize crossings in need of upgrade based on an assessment of relative danger.  Section 924.9(a)(3)(iii), Title 23, C.F.R.  The states must also evaluate their programs and report annually to the federal authorities.  Sections 924.13 and 924.15, Title 23, C.F.R.  Any improvements the states do initiate must comply with the Manual on Uniform Traffic Control Devices for Streets and Highways ("MUTCD") in order to receive federal aid.  Sections 646.214(b)(1) and 655.603, Title 23, C.F.R.

The controlling preemption provision is contained in Section 434, Title 45, U.S. Code, which provides:

"The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable.  A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement.  A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce."

The Easterwood court held that in order to show preemption the Secretary's regulations must go beyond a relation to or a touching upon the subject matter but must "cover" the situation.  Id., 507 U.S. at    , 113 S.Ct. at 1738, 123 L.Ed.2d at 397.  The court noted that "covering" occurs "only if the federal regulations substantially subsume the subject matter of the relevant state law."  Id.

Conrail first argues that the promulgation of Parts 655 and 924, Title 23, C.F.R. preempts state negligence law regarding railroad crossing liability for inadequate warnings by shifting responsibility and standards to a state agency.  The Easterwood court rejected these contentions.  In so doing, the court reasoned that Part 924, Title 23, C.F.R. merely establishes a state bureaucracy to officially and rationally administer federal funds.  The regulations do not "cover" the subject of crossing liability.  Id., 507 U.S. at    , 113 S.Ct. at 1739, 123 L.Ed.2d at 398-399.  In Easterwood, the court also dismissed the argument that the mere incorporation of the MUTCD into federal regulations by Part 655, Title 23, C.F.R. preempts the field.  The court noted the express provisions of the manual to the contrary and concluded that the manual does not create "an alternative scheme of duties incompatible with existing Georgia negligence law ***."  Id., 507 U.S. at    , 113 S.Ct. at 1740, 123 L.Ed.2d at 400.

However, the Easterwood court did not totally foreclose the issue of federal preemption in the area of warnings.  It held that Sections 646.214(b)(3) and (4), Title 23, C.F.R.1 "do establish requirements as to the installation of particular warning devices.  Examination of these regulations demonstrates that, when they are applicable, state tort law is pre-empted."

Id. at     , 113 S.Ct. at 1740-1741, 123 L.Ed.2d at 400.  In Easterwood, the Georgia Department of Transportation had initiated a multi-crossing warning system that encompassed improvements to the Cook Street crossing in Cartersville. While Cook Street had been scheduled for a crossing gate and the requisite funds had been committed, the city rejected the idea because of traffic concerns and, therefore, abandoned its plan to place a gate at the crossing in question.  The funds were diverted to another project.  In holding that the prerequisite for preemption under Section 646.214(b)(3) or (4), Title 23, C.F.R. had not been met, the court, quoting Section 646.214(b)(3)(i), Title 23, C.F.R., stated that federal funds had not "'participate[d] in the installation of the [warning] devices' at Cook Street."  Id. at     , 113 S.Ct. at 1741, 123 L.Ed.2d at 401.  Apparently, the court concluded that planning and preparation are insufficient to evoke preemption.  Before a state law governing warning devices will be deemed preempted, federal funds must actually have been committed and spent, and the "warning devices," as defined in Sections 646.204(i) and (j), Title 23, C.F.R., must have been installed.

Conrail advances an argument similar to that espoused by petitioner in Easterwood.  Citing correspondence between Conrail and ODOT which predated the collision, Conrail contends that planning had been authorized and commenced for crossing gates at the Moultrie crossing.  However, as in Easterwood, there is no allegation that federal funds had been committed, that construction had been completed or that the crossing fell within either of the categories outlined under Section 646.214(b)(3) or (4), Title 23, C.F.R.  Therefore, according to the mandates of Easterwood, federal preemption had not yet arisen.

Alternatively, Conrail argues that even if federal law has not preempted the field, Conrail is still not liable because the state has assumed sole responsibility for crossing safety pursuant to the federal legislation.  Conrail contends that under R.C. 4511.16, railroads are prohibited from installing traffic control devices and that the sole authority for installation is now vested in public authorities under R.C. 5523.31.

Under Ohio common law, railroads have a duty to use ordinary care to protect motorists from and warn them of trains occupying or approaching a highway crossing.  Matkovich v. Penn Cent. Transp. Co. (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652.  A railroad's minimum statutory duty is to erect crossbuck signs at each crossing pursuant to R.C. 4955.33, and this duty may be enlarged under the common law to include additional warnings given special circumstances.  Id. at 214-215, 23 O.O.3d at 226-227, 431 N.E.2d at 655-656.

Ohio's program for inventorying and categorizing railroad crossings predates the Federal Railway Safety Act and the Highway Safety Act.  R.C. 5523.31 (formerly R.C. 5524.01 [127 Ohio Laws 888, effective September 16, 1957]).  Originally, authority to rank crossings by degree of danger was vested with the Director of Transportation, but he was not given the authority to order additional warning devices.  Id.  This authority was vested in the Public Utilities Commission.  R.C. 4907.52.

Following the enactment of the Highway Safety Act, R.C. 5523.31 was amended to give the Director of Transportation authority to initiate crossing improvements. 135 Ohio Laws, Part I, 1247 (effective July 26, 1973). The director's authority is not absolute. By the terms of the statute, the director may enter into negotiations with the railroad and the relevant political subdivision concerning warning upgrades. If an impasse is reached, the director may institute proceedings with the Public Utilities Commission which, after public hearings, could order additional warning devices under R.C. 4907.47. Therefore, no public agency is given sole authority to order crossing improvements but, rather, government entities are expressly authorized to first negotiate with railroads for crossing improvements. This statutory scheme does not manifest an intent by the General Assembly to create full responsibility in the state for grade crossing warning devices.

This conclusion is further buttressed by R.C. 4907.49, which expressly permits a railroad to install additional warning devices without an order from the Public Utilities Commission. In light of R.C. 4907.49, we find Conrail's argument that only public authorities may erect warning devices under R.C. 4511.16 to be totally unpersuasive. R.C. 4511.16 is more consistently read as a prohibition against unauthorized installation of signs that might obstruct existing signs or confuse motorists, not as an absolute bar to the railroad's erection of warning devices.

We note that in 1989, after the incident at issue, the responsibility for ranking crossings and negotiating for additional protective devices was shifted to the Public Utilities Commission. R.C. 4907.471, 143 Ohio Laws, Part II, 2529, effective July 1, 1989. The statute, since its original incarnation as R.C. 5524.01, has always provided that the crossing list shall not be admissible as evidence in a negligence suit, thereby adding further support for the conclusion that the General Assembly did not and does not intend to vest sole responsibility for warning devices in public agencies. 127 Ohio Laws 888.

When Ohio's statutory scheme for regulation of railroad crossings is read in toto against the backdrop of the Federal Railroad Safety Act and the Highway Safety Act, we are unpersuaded that the common-law duty of railroads over their grade crossings has been abrogated. Ohio's law merely provides a mechanism to distribute state and federal funds for the improvement of highway warning devices. The common-law duty of a railroad has not been eliminated. A question of fact remains as to whether Conrail should have independently upgraded the warning devices at its crossing on S.R. 172 in Moultrie. Summary judgment was therefore improper.

For the foregoing reasons, the judgment of the court of appeals is affirmed and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed.

A.W. Sweeney, Douglas, Wright, F.E. Sweeney and Pfeifer, JJ., concur.

Prior to his death while sitting for Resnick, J., John F. Corrigan, J., of the Eighth Appellate District, participated in the decision of this cause.

FOOTNOTE:

     1 Section 646.214(b)(3)(i) provides:

     "Adequate warning devices, under {646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:

     "(A) Multiple main line railroad tracks.

     "(B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.

     "(C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.

     "(D) A combination of high speeds and moderately high volumes of highway and railroad traffic.

     "(E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of school-buses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.

     "(F) A diagnostic team recommends them.

     "***

     "(4) For crossings where the requirements of {646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of [the Federal Highway Administration]."

2072C