70 F.3d 1271
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jo Ann GERACI, Individually and as Executrix of the Estate
of Jerome J. Duyck, Deceased, Plaintiff-Appellant,
v.
CONSOLIDATED RAIL CORPORATION, Defendant-Appellee.
 No. 94-3942.
 United States Court of Appeals, Sixth Circuit.
 Nov. 20, 1995.
 
 Before: KEITH, JONES, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Jo Ann Geraci appeals the entry of summary judgment in favor of the Consolidated Rail Corporation ("Conrail") in this action seeking damages for the death of Jerome J. Duyck. Duyck died as a result of a collision between his automobile and a Conrail train. For reasons explained below, we reverse the summary judgment order and remand for further proceedings.
 
 
 2
 * Conrail owns a train track running across Coen Road in Vermilion, Ohio. The tracks cross the road at a 45-degree angle. For northbound automobile traffic, an eastbound train approaches the intersection at an acute angle on the automobile's left. Nothing obstructs vision from the relevant section of the road to the track. The speed limit on Coen Road is 55 mph. The intersection is at the top of a slight hill. Approximately fifty trains per day cross the intersection at speeds between 50 and 75 mph. Ohio law requires, and Conrail maintains, a crossbuck railroad post and pavement markings at the intersection, and an advance warning sign down the road. There is no stop sign, crossing gate, flashing light, or any other warning not required by statute.
 
 
 3
 At about 7:30 a.m. on October 9, 1989, a Conrail train collided with a Chevy van at the intersection, killing Duyck, its driver and only occupant. Duyck approached the intersection from the south at 40 mph. He did not attempt to brake until immediately before the collision. The train approached from the south-west at 64 mph. The speed of the vehicles and the angle of the road and the track resulted in a constant angle of about 95 degrees between Duyck's line of movement and his line of sight to the train, assuming constant speed for each vehicle. There was a period of 8-10 seconds before impact during which he could have looked to his left and seen the train. Before that period, the train would not have been visible.
 
 
 4
 The rate of accidents at the intersection is significantly higher than the national average for similarly posted intersections. There have been at least seven collisions at the intersection in the last twenty-five years. Conrail knew that there was a higher than average number of accidents at the intersection. Conrail has no internal procedures by which it evaluates the safety of particular intersections after a collision has occurred. No Ohio commission has ever requested Conrail to erect additional protection at the crossing.
 
 
 5
 Duyck's estate alleges that the approaching train did not sound its horn. This testimony is contradicted by the affidavit of the train conductor. It is weakly corroborated by the affidavit of Alice Kristoff. Kristoff was driving two or three car lengths behind Duyck. She saw the train while approximately 200 feet from the crossing. She states that she did not hear a whistle, but her heater and radio were on.
 
 
 6
 Jo Ann Geraci is the administratrix of the decedent's estate. She brought a wrongful death action in the Court of Common Pleas, Erie County, Ohio. Conrail removed the action to the United States District Court for the Northern District of Ohio. The district court, after discovery, entered summary judgment for Conrail. The district court held that Conrail had not breached its duty of care, and that, even if it had, Duyck's negligence was so great as to bar recovery as a matter of law.
 
 II
 
 7
 The first issue we must address is the standard under Ohio law for a railroad's duty to provide extra-statutory warnings at a train crossing. The district court used a test from Hood v. New York, Chicago & St. Louis R.R., 166 Ohio St. 529, 190 N.E.2d 678 (1957). Hood holds that a railroad has a duty to post extra-statutory warnings if there is a substantial risk that a driver who exercises ordinary care would not be able to avoid colliding with a train. Effectively, that standard examines the railroad's behavior by looking at the behavior of the driver. In this case, for example, the district court held that a driver using ordinary care would look at least ninety degrees to the left when approaching the intersection and would yield to the coming train. Since nothing blocked the view from the road, the judge held that Conrail had no duty to take any warning measures beyond the statutory minimum.
 
 
 8
 The problem with the district court's analysis is straightforward: the Hood test was replaced in Matkovitch v. Penn Central Transportation Company, 69 Ohio St.2d 210, 431 N.E.2d 652 (1982). Matkovitch concerned a collision victim's claim that a railroad's failure to post extra-statutory warnings at an intersection was wanton misconduct. One of the elements of wanton misconduct is the existence of a duty owed to the plaintiff by the defendant. Id., 69 Ohio St.2d at 212. The Ohio Supreme Court spent the majority of its opinion outlining the contours of the duty railroads owe motorists. It criticized prior case law, which held that the presence of a visible train is presumptively sufficient notice to motorists. Id. at 213-14. One of the cases it identified as standing for this proposition was Hood. The court writes:
 
 
 9
 The concept of a train serving as notice may have been reasonable decades ago when this standard was formulated. However, we must determine whether the train constituted actual notice in this case.... Penn Central had a duty to exercise ordinary care to protect the public safety and in this case that duty required giving additional warning of the presence of the train.
 
 
 10
 Id. at 213. The court eventually found for the defendant on grounds that its conduct was not wanton. On the way, the court replaced the older rules about extra-statutory warnings, holding that "a general rule of ordinary care in which all the circumstances can be considered ... is more appropriate." Id. at 215 (emphasis added).
 
 
 11
 Therefore, we hold that a railroad has a duty of ordinary care to protect the safety of motorists. This conclusion modifies prior case law which required extra-statutory warnings only when a crossing was particularly hazardous.
 
 
 12
 Id. at 215 (citation omitted). Accord Carpenter v. Consolidated Rail Corp., 69 Ohio St.3d 259, 263, 631 N.E.2d 607, 611 (1994).
 
 
 13
 Matkovitch is factually distinct from Geraci's case. It was night, there was no cross-buck or sign, and the intersection was infrequently used. Id. at 214. But the holding of the Ohio Supreme Court is broad and widely cited, and its modification of the previous law of extra-statutory warnings is express. Accord Tritt v. Judd's Moving Storage, Inc., 62 Ohio App.3d 206, 216, 574 N.E.2d 1178, 1185 (1990) (dicta) (Matkovich modifies and extends the scope of the common law duties created by Hood ).
 
 
 14
 We therefore hold that under the Ohio law concerning train-automobile collisions, a motorist's breach of his or her duty of ordinary care does not stop a court from inquiring into the negligence of the railroad. To the extent that it is incompatible with this rule, Hood is not good law. We are not troubled by intermediate state appellate court decisions that mention or apply the Hood test after Matkovich. Glick v. Marler, 82 Ohio App.3d 752, 613 N.E.2d 254 (1992); Cox v. Consolidated Rail Corp., No. CA89-02-030, 1989 WL 99314 (Ct.App. Butler County, Aug. 28, 1989); Davidson v. CSX Transportation, 91 Ohio App.3d 27, 31, 631 N.E.2d 676, 679 (1993). In none of these cases is the Hood test outcome determinative. And even if the cases were clearly on point, a federal court need not "blindly follow" intermediate state court precedent if there is "a better reasoned" analysis that the highest state court is more likely to apply. Pratt v. Brown Mach. Co., 855 F.2d 1225, 1235 n. 11 (6th Cir.1988). See also Clutter v. Johns-Manville Sales Corp., 646 F.2d 1151, 1153 (6th Cir.1981) (a federal court must look primarily to the opinions of the state's highest court); Kochins v. Linden-Alimark, Inc., 799 F.2d 1128, 1140 (6th Cir.1986) (appellate court precedent should not be followed if the federal court "is convinced by other persuasive data that the highest court of the state would decide otherwise." (citations omitted)). Therefore, the court erred in not evaluating the case according to Matkovich, and in not determining if Conrail breached its duty of ordinary care.
 
 III
 
 15
 The second issue on appeal is whether a reasonable jury could find that Consolidated breached its duty of ordinary care by failing to take steps beyond the minimum statutory requirements. See Lyon v. Ohio Educ. Ass'n and Professional Staff Union, 53 F.3d 135 (6th Cir.1995) (de novo review of summary judgment order), and Coffey v. Foame L.P., 2 F.3d 157, 159 (6th Cir.1993) (non-movant's evidence must be such that reasonable jury could return a favorable verdict). Under Ohio law, the duty of a railroad to post warnings depends on "all the circumstances." Matkovich, 69 Ohio St.3d at 215. Generally, evidence of prior knowledge of a hazard and the steps that could have been taken to eliminate it is admissible to prove negligence. Vance v. Consolidated Rail Corp., 73 Ohio St.3d 130, 136, 652 N.E.2d 702, 706 (1995) (accident at work site); Onerko v. Richmond Mfg. Co., 31 Ohio St.3d 296, 301, 511 N.E.2d 388, 392 (1987) (products liability). Geraci has presented evidence of a hazard and of repeated failure to remedy it. The train traffic at the intersection was heavy. The angle presented a difficult view of the train to drivers facing front. There had been a number of previous accidents. The train whistle, if blown, may not have been loud enough to be heard over a radio and heater. And Conrail had no procedure to improve posting after accidents. These facts are sufficient to warrant submission of the issue to the jury.
 
 IV
 
 16
 The final question is whether Duyck's comparative negligence barred recovery as a matter of law.[1] To bar recovery, the negligence of the plaintiff must be "greater" than the negligence of "all other persons from whom the complainant seeks recovery." O.R.C. Sec. 2315.19. Comparison of the negligence of the different parties is difficult because the plaintiff's negligence is a discrete act (not looking left during the 8-10 seconds before collision), while the defendant's is a policy (not posting lights or a stop sign). Nor is the determination made easier by any non-circular definition of "ordinary" care. A trier of fact must decide the reasonableness, burden, and effect of various precautions. How many drivers look to their left 95 degrees? Do people really pay attention to signs in the middle of an empty field? Are ordinary people often distracted for eight seconds by a daydream or uncooperative radio tuner? Would flashing lights help? Would a stop sign? How much do they cost? Would "ordinary" railroads pay attention to the accident rate at intersections? Is the acute angle of intersection something about which railroad companies should think? When the question arises as to how ordinary people should and do behave, Ohio has decided to ask ordinary people. Wise v. Timmon, 64 Ohio St.3d 113, 116, 542 N.E.2d 840, 843 (1992) (apportionment of negligence of automobile drivers is a question of fact for the jury); Merchants Mutual Ins. Co. v. Baker, 15 Ohio St.3d 316, 318, 473 N.E.2d 827, 828-29 (1984) (foreseeability and relative causation are questions of fact for the jury). On the record of this case, we hold that a reasonable jury could find that the negligence of Conrail in not posting was greater than the negligence of Duyck in driving without checking his blind spot.
 
 
 17
 We REVERSE and REMAND for further proceeding in accordance with this opinion.
 
 
 
 [1]
 The parties dispute whether Duyck violated O.R.C. Sec. 4511.62(A), which requires a driver to stop at a crossing when an approaching train is "plainly visible" in "hazardous proximity" to the crossing. Geraci argues that something approaching from 95 degrees to the direction of movement is not "plainly visible." Conrail argues that something that one can view without obstruction is "plainly visible." It is not clear which interpretation is better. We are saved from construing the statute by the unimportance of the issue. Even assuming Duyck violated the statute and that such a violation is negligence per se, the question of whose negligence was greater remains for the jury to decide. Cf. Tomlinson v. City of Cincinnati, 4 Ohio St.3d 66, 69, 446 N.E.2d 454, 456 (1983) (in negligence case, a question of fact regarding effect of violation of statute is for the jury to decide)