OSBORN et al., Appellants and Cross–Appellees,

v.

NORFOLK & WESTERN RAILWAY COMPANY
et al., Appellees and Cross–Appellees;

Estate of Osborn, Cross–Appellant.

[Cite as *Osborn v. Norfolk & Western Ry. Co.* (1990), 68 Ohio App.3d 85.]

Court of Appeals of Ohio,
Paulding County.

No. 11–88–25.

Decided June 19, 1990.

*Huffman, Gallagher, Schlageter & Breier* and *Thomas W. Gallagher*, for appellants and cross-appellees.

*Williams, Jilek & Lafferty Co., L.P.A.*, and *Alan L. Mollenkamp*, for cross-appellant estate of Francis A. Osborn.

*Eastman & Smith, Peter R. Casey III* and *John D. Willey, Jr.*, for appellee and cross-appellee Countrymark, Inc.

*Robison, Curphey & O'Connell* and *Jack Zouhary*, for appellees and cross-appellees Norfolk & Western Ry. Co., John Imke and Joseph Trinkle.

THOMAS F. BRYANT, Judge.

These are appeals from a judgment of the Court of Common Pleas of Paulding County.

This case arises out of the grade-crossing collision of October 18, 1986, between the lead engine of a train operated by the Norfolk & Western Railway Company ("Norfolk & Western") and a 1980 Dodge Colt operated by

Francis A. Osborn, Jr. As a result of the collision, Francis A. Osborn, Jr. and his wife Betty Osborn were killed and their son, Corey Osborn, was injured.

This cause of action was filed on behalf of Corey Osborn and the estate of Betty Osborn by Terry Dockery, administrator of the estate of Betty Osborn and by Terry and Sandra Dockery, court-appointed guardians of Corey Osborn. Claims were filed against the Francis Osborn estate, Norfolk & Western, train crew members John Imke and Joseph Trinkle, and Countrymark, Inc., owner of the side track and grain elevator located at the crossing. A claim was later filed against Norfolk & Western and Countrymark, Inc. by the estate of Francis A. Osborn, Jr.

Defendants, Norfolk & Western, John Imke, Joseph Trinkle and Countrymark, Inc. filed motions for summary judgment. On October 27, 1988, the trial court granted the motions for summary judgment stating:

"[T]he Court after consideration of the pleadings, depositions, and affidavits filed herein finds, construing the evidence most strongly in favor of the plaintiffs and cross-claimant, that there is no genuine issue as to any material fact and that reasonable minds can come to but one conclusion and that conclusion is that said defendants are entitled to a judgment as a matter of law."

The estate of Francis A. Osborn, Jr. now appeals that judgment asserting one assignment of error. Terry and Sandra Dockery, as court-appointed guardians of Corey Osborn, and Terry Dockery, as administrator of the estate of Betty Osborn, also appeal asserting two assignments of error.

The three assignments of error follow:

The estate of Francis Osborn alleges:

"1. The trial court, in granting summary judgment, erred in holding that there are no genuine issues of material fact as to the negligence of appellees in causing the death of Francis A. Osborn."

Terry and Sandra Dockery as guardians for Corey Osborn and Terry Dockery as administrator for the estate of Betty Osborn allege:

"1. The lower court, in granting the motion for summary judgment erred in holding that no genuine issues of material fact exist as to the negligence of the defendants-appellees, Norfolk & Western Railway Co., John Imke and Joseph Trinkle, and Countrymark, Inc., in causing the death of Betty F. Osborn and the severe and debilitating injuries sustained by Corey Osborn.

"2. The lower court, in granting the motions for summary judgment as against the plaintiffs-appellants, erred in that it wrongfully attributed the alleged contributory negligence of Francis A. Osborn to the passengers of the automobile, Betty F. Osborn and Corey Osborn."

"Liability for negligence is predicated upon injury caused by the failure to discharge a duty owed to the injured party." *Deeds v. American Security*

(1987), 39 Ohio App.3d 31, 32, 528 N.E.2d 1308, 1311. In order to sustain an action based upon negligence, the plaintiff must demonstrate: "(1) the existence of a duty owing to the plaintiffs; (2) a breach of that duty; and (3) proximate causation." *Moncol v. Bd. of Edn.* (1978), 55 Ohio St.2d 72, 75, 9 O.O.3d 75, 77, 378 N.E.2d 155, 157.

In determining the appropriateness of the trial court's decision to grant the appellees' motion for summary judgment, we must examine the facts for evidence of a duty owed to the appellants by the appellees. If a duty was owed we must then determine if there was a breach of that duty and whether the breach was the proximate cause of appellants' injuries.

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). On a motion for summary judgment, the moving party bears the burden of showing that no issue exists as to any material fact. *State v. Licsak* (1974), 41 Ohio App.2d 165, 70 O.O.2d 325, 324 N.E.2d 589, syllabus. "A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Civ.R. 56(C). The trial court must construe the evidence most strongly in favor of the nonmoving party. Civ.R. 56(C). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Civ.R. 56(E).

Appellants assert in support of their assignments of error that three hopper cars located on the spur track in front of Countrymark, Inc. were negligently placed and as situated obstructed the hearing and vision of the Osborns as their auto entered the railroad crossing. The appellants further claim that the crossing was improperly marked, that the speed of the train is undetermined, that the setting sun may have blinded the driver of the Osborn auto, and that the engineer and brakeman operating the locomotive were not keeping a vigilant watch for dangers at the crossing.

We take note of the fact that from the direction taken by the Osborn auto, there were three sets of tracks to be crossed. The first tracks were the spur tracks of Countrymark, Inc. upon which sat three grain hopper railroad cars. The second set of tracks were passing tracks of the railway. The third set of

tracks were the mainline railway tracks upon which the Osborn car was struck.

The affidavits presented by the appellees indicate that the train was traveling at approximately fifty-three to fifty-four m.p.h. This speed was in compliance with the railroad timetable recommended speed of sixty mph for the type of crossing the train was approaching. There were no state statutes nor local ordinances in force regulating the speed of the trains at the time and place of the Osborn collision. Appellants did not by affidavit contradict the fact of the speed asserted by appellees. Consequently, there was presented to the trial court no issue of fact of speed of the train and no issue of negligent breach of duty by either the railroad company or its employees arising from the matter of the train's speed in this case. No duty of Countrymark, Inc. is shown with respect to the speed of the train, of course.

■ The Appellees' affidavits reveal that the crossing was protected by an advance Ohio Department of Transportation warning disc north of the crossing, and the standard reflectorized crossbucks required by R.C. 4955.33, as well as a highway stop sign. Although appellants claim that the physical warning devices were inadequate, in the absence of evidence that the railway company knew of an extraordinary hazard presented by the crossing in question, we must assume, as the court apparently did, that the physical warning devices placed by the railway company and the Department of Transportation were appropriate for the crossing. See, *e.g., Stoler v. Penn Central Transp. Co.* (C.A.6, 1978), 583 F.2d 896, 11 O.O.3d 316.

■ Appellants imply that it was the responsibility of the engineer and brakeman to anticipate Osborn's entry onto the tracks in front of the train. It is not negligent for the engineer and brakeman of a railroad locomotive to assume that an automobile approaching the tracks will yield to the oncoming train. The engineer by uncontroverted affidavit stated that he sounded the regulation whistle signal sequence, that the engine headlight was on bright and that the bell was ringing as the train approached the crossing. There is no evidence presented by affidavit or otherwise to indicate that either of these two appellees failed to perform their job responsibilities. There is evidence that the locomotive's automatic braking device required three quarters of a mile to stop the train and there is no evidence from which may be inferred either the engineer's or brakeman's knowledge that Osborn would fail to yield to the train or that if they knew, that they could have stopped the train more quickly than the automatic device stopped it.

■ Appellants claim that the hopper cars on the side track in front of Countrymark, Inc. were placed negligently and inhibited Osborn's ability to

see and hear the train. The appellants cite the "Norfolk & Western Railway Company Operating Rules." It is not clear that these rules apply to commercial spurs placed for the benefit of private business access to the main railway lines. However, if we assume that the spur or side track falls into the category of railroads operated by Norfolk & Western governed by the Rules, we note that Rule 103(c) states: "Engines or cars left on tracks adjacent to a public or private crossing must, *when practicable,* be left not less than 100 feet from the crossing." (Emphasis added.) This language, even assuming it applies to Countrymark's spur, is merely directory. Countrymark asserts that placing the cars farther up the track was not practicable for their business use. Additionally, appellants have failed to cite any state or local government regulation concerning clearing distances between crossings and stored equipment violated by appellees to thus imply negligence. Appellants' expert in his affidavit deplores the limited visibility engendered by the parked hopper cars, but this criticism in and of itself establishes neither a breach of duty by the appellees nor an issue of fact requiring trial where the matter is not material to establish the breach of duty relevant to decision of the motion for summary judgment.

We will assume for the moment that Osborn stopped at the stop sign before starting across Countrymark's spur and was unable to see or hear the oncoming train. The law in Ohio is clear in this situation. " 'The driver of a motor vehicle about to pass over a railroad grade crossing on a public highway is required both to look and listen for approaching trains, and the looking and listening must be at such time and place and in such manner as to be effective for that purpose * * *.' *North v. Pennsylvania Rd. Co.* (1967), 9 Ohio St.2d 169 [38 O.O.2d 410, 224 N.E.2d 757] * * *; *Boles v. B. & O. Rd. Co.* (1959), 168 Ohio St. 551 [7 O.O.2d 427, 156 N.E.2d 735] * * *." *Tolliver v. Consolidated Rail Corp.* (1984), 11 Ohio St.3d 56, 57, 11 OBR 201, 202, 463 N.E.2d 389, 390. Osborn was required to use senses of sight and hearing to avoid injury before driving onto the railroad crossing with which the evidence shows he was familiar. Osborn was required to use his senses before going into the zone of danger. See *Werner v. New York, Chicago & St. Louis RR. Co.* (Dec. 16, 1949), Hancock App. No. 511, unreported. From the unchallenged photographs of the scene presented by appellees, and from the description of the juxtaposition of the tracks, the stop sign and the hopper cars, considering the relatively low speed to which Osborn could have accelerated within the forty-five-foot distance between a stop at the stop sign and the location of the main tracks, reasonable minds can conclude only that had he looked and listened for an approaching train, he could have stopped his auto and yielded the right of way if need be. A person who goes upon a multiple-track railroad crossing proceeds at his own risk "[i]f his failure to look in the

direction from which a train is approaching, at a time and place when such looking would have been effective, results in an injury to himself when the same might have been avoided." *Pennsylvania RR. Co. v. Rusynik* (1927), 117 Ohio St. 530, 159 N.E. 826, syllabus. Appellant claims that the setting sun may have impaired Osborn's ability to see the oncoming locomotive. While this may be true, the railroad nevertheless may not be found negligent solely for the results of conditions of nature. Moreover, the greater the difficulty of seeing in the conditions presented, the greater the duty of an automobile driver approaching a railroad crossing to exercise caution to discover danger, if any, under those circumstances.

■ All the facts when taken together do not establish a sufficiently confusing and hazardous condition at the time of the incident to diminish Osborn's duty to look and listen or to impair his ability to react to that which was to be seen and heard. Nor is there evidence of negligence on the part of the appellants as to any of their recognized responsibilities. See *Biery v. Pennsylvania RR. Co.* (1951), 156 Ohio St. 75, 76–78, 45 O.O. 70, 71–72, 99 N.E.2d 895, 896. Further, a railway employee accompanying the train on its trip stated in his affidavit that he as an eyewitness had a clear view of the automobile as it approached the crossing. The employee stated that the Osborn automobile was traveling at about thirty to thirty-five m.p.h. and did not stop or slow as it drove over the siding track and passing track onto the main track into the path of the oncoming train. There is no evidence asserted to the contrary. Appellants' expert in his affidavit offers his opinion to establish that this witness could not have seen what he claims to have seen. However, even if we ignore the statements of the eyewitness, we are compelled to find from the other evidence that Francis Osborn failed to yield the right of way due the oncoming train when there was sufficient time and distance for him to have done so and that such failure was the sole proximate cause of the accident and injuries.

■ Norfolk & Western and its employees were required to operate their equipment in a safe and lawful manner. The affidavits presented indicate that the speed of the train was proper for the location, all aural warning devices were activated, and the physical warning devices located at the crossing were appropriate. We can find no other duty owed the Osborns and we have found no breach of these duties. As to the location of the hopper cars on the Countrymark, Inc. spur, we can find no breach of duty owed by the railroad or by Countrymark, Inc. as to safety requirements for parked hopper cars. Even though there may have been sight and sound impediments at the crossing, the law in Ohio is clear that the burden of safety is on the motorist as he approaches a railroad crossing. The placement of this burden

is consistent with other areas of Ohio negligence law. See *Baldauf v. Kent State Univ.* (1988), 49 Ohio App.3d 46, 49, 550 N.E.2d 517, 520–521; *Cheney v. Harrison Restaurant, Inc.* (Mar. 7, 1990), Marion App. No. 9–88–42, unreported, 1990 WL 25063. We do not find that the trial court imputed the negligence of Francis A. Osborn, Jr. to his passengers but, rather, we agree with the trial court that reasonable minds cannot differ in concluding that the acts and omissions of Francis A. Osborn, Jr. solely caused the accident and injuries of which the appellants complain. Since, the uncontradicted material matter presented to the trial court discloses no breach by appellees of any duty owed to any of the Osborns we overrule all of the appellants' and cross-appellant's assignments of error.

For the reasons stated above and upon the authorities cited and discussed, the judgment of the Court of Common Pleas of Paulding County is affirmed.

*Judgment affirmed.*

SHAW, P.J., and EVANS, J., concur.