**TARDY, Admr., Appellant,**

v.

**NORFOLK SOUTHERN CORPORATION et al., Appellees.**[*]

[Cite as *Tardy v. Norfolk S. Corp.* (1995), 103 Ohio App.3d 372.]

Court of Appeals of Ohio,
Fourth District, Pike County.

No. 94 CA 534.

Decided May 3, 1995.

---

[*] Reporter's Note: A motion for a discretionary appeal to the Supreme Court of Ohio was not allowed in 74 Ohio St.3d 1408, 655 N.E.2d 187.

*Clark, Perdue & Roberts Co., L.P.A.,* and *Edward L. Clark,* for appellant.

*Porter, Wright, Morris & Arthur* and *Patrick J. Smith,* for appellee Norfolk & Western Railway Co.

*Per Curiam.*

This is an appeal from a Pike County Common Pleas Court summary judgment in a negligence action brought by Diane Tardy, administrator of the estate of James C. Tardy, deceased, against Norfolk & Western Railway Company ("N & W"), defendant below and appellee herein. Appellant's husband, James C. Tardy, died when a train collided with his car at a grade crossing on Seif Road in Pike County.

Appellant assigns the following errors:

First Assignment of Error:

"The court below erred in holding that state and federal law pre-empts any duty defendant may have to install active warning devices."

Second Assignment of Error:

"The court below erred in disregarding evidence of previous collisions at the subject crossing where such evidence was relevant and admissible with respect to plaintiff's claims."

Third Assignment of Error:

"The court below committed reversible error by determining that 23 U.S.C. Section 409 required exclusion of evidence of prior collisions as well as the entirety of the expert opinion testimony offered by plaintiff."

Fourth Assignment of Error:

"The court below committed reversible error by finding as a matter of law that defendant had no duty to install active warning devices at the Seif Road crossing."

Fifth Assignment of Error:

"The trial court erred by finding plaintiff's decedent the sole cause of the grade crossing collision where the evidence regarding causation and comparative responsibility was in conflict."

Sixth Assignment of Error:

"The trial court erred by entering summary judgment where the evidence presented a genuine issue of material fact regarding defendant's compliance with the statutory requirement to sound audible signals."

While the record in this case contains voluminous evidentiary materials, the facts in this case are not complex. N & W has a two-track rail line which runs north and south, parallel to State Route 23. Seif Road is perpendicular to State Route 23, running east and west. There is a grade crossing where Seif Road and the railroad tracks intersect. A black and yellow railroad sign and a black and white railroad crossbuck mark the grade crossing. The railroad right-of-way is one hundred feet wide. Carter Lumber is on Seif Road, just east of the tracks. As James Tardy was leaving Carter Lumber, he drove westward across the grade crossing. A southbound N & W train, driven by engineer Carl Kimberlain, collided with Tardy's vehicle. Tardy was killed. We will mention other facts as we discuss appellant's assignments of error.

In her complaint, appellant alleged that N & W (1) negligently designed and maintained the crossing, (2) failed to install active traffic control devices, and (3) failed to warn motorists of on-coming trains. The trial court granted summary judgment dismissing the action.

Appellant filed a timely notice of appeal.

## I

In her first assignment of error, appellant asserts the trial court erred by holding that state and federal law preempts any duty appellee might have had to install active warning devices at the grade crossing. We agree with appellant.

The trial court wrote in pertinent part as follows:

"The Ohio General Assembly has given to the PUCO and not to the railroads the responsibility of determining at which crossings automatic flashers and gates should be placed to protect all motorists. * * * Therefore, * * * the N & W had no duty to install such devices at this crossing."

The Ohio Supreme Court rejected the above reasoning less than one month after the trial court's decision. In *Carpenter v. Consolidated Rail* (1994), 69 Ohio St.3d 259, 264, 631 N.E.2d 607, 611, the Supreme Court wrote in an unanimous opinion:

" * * * When Ohio's statutory scheme for the regulation of railroad crossings is read *in toto* against the backdrop of the Federal Railroad Safety Act and the Highway Safety Act, we are unpersuaded that the common-law duty of railroads over their grade crossings had been abrogated. * * * The common-law duty of a railroad has not been eliminated."

Consequently, we find that the trial court erred in its finding on this issue.

Accordingly, based upon the foregoing reasons, we sustain appellant's first assignment of error.

We note, however, that during our consideration of appellant's fourth, fifth and sixth assignments of error, *infra*, we independently reviewed the entire record transmitted on appeal, applied the correct law, and concluded that the trial court correctly granted appellee's motion for summary judgment. Consequently, we need not remand the case for further proceedings.

## II

In her second assignment of error, appellant asserts that the trial court erred by disregarding evidence of previous collisions at the grade crossing. In her third assignment of error, appellant asserts the trial court erred by determining that Section 409, Title 23, U.S.Code, required exclusion of evidence of prior collisions. We will discuss these two assignments of error together.

These two assignments of error, like the first assignment of error, concern the effect of federal law on the issues in this case. Title 23, U.S.Code, requires states receiving federal money to do surveys on dangerous conditions or hazardous locations. Section 152, Title 23, U.S.Code, discusses railroad crossings.

Section 409, Title 23, U.S.Code, provides:

"Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data."

The intent of Section 409 is obvious. State and federal officials who make funding decisions must know which sites are the most hazardous. In the results of any survey, one item will always be at the top of the list, *i.e.,* one railroad grade crossing will always be characterized as the most hazardous railroad grade crossing. Consequently, the mere fact that a hazard survey exists might render the owner of the highest ranked railroad grade crossing subject to liability for maintaining a hazardous crossing. In order to encourage candor in reporting, Congress declared that "reports, surveys, schedules, lists, or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway highway crossings" are inadmissible in evidence in actions arising out of occurrences at locations mentioned in the documents.

■ In the case *sub judice,* the trial court relied on Section 409 when excluding the testimony of appellant's expert and all evidence relating to previous accidents at the railroad grade crossing in question. We find the trial court erred by excluding this testimony and evidence.

Under *Carpenter, supra,* the railroad still has a common-law duty to maintain a safe crossing. All crossings are dangerous to some extent, but under *Hood v. New York, Chicago & St. Louis RR. Co.* (1957), 166 Ohio St. 529, 534, 3 O.O.2d 12, 15, 144 N.E.2d 104, 108, the burden is on the plaintiff to show that " * * * something beyond the usual substantial risk of danger at a railroad crossing must exist before a jury can be permitted to determine that a railroad should have provided extra statutory warning at such crossing. * * *"

Previous accidents at the same site would tend to establish the hazardousness of the site. If a dozen people had been killed at a site, a trier of fact might reasonably infer that the site was dangerous. These dozen deaths would naturally be included in statistics gathered for inclusion in official reports made pursuant to Section 409. The question then becomes: Does the fact that information of previous accidents at a site is included in reports made under Section 409 make all evidence of the previous accidents inadmissible? We think not. If all accidents are reported and no evidence of prior reported accidents is admissible, a plaintiff could never meet the burden of proof under *Hood, supra*— an anomalous result.

Louisiana, which also uses the extrahazardous-crossing standard as the burden of proof for a plaintiff, dealt with this anomaly in *Wiedeman v. Dixie Electric Membership Corp.* (La.1993), 627 So.2d 170. The Louisiana Supreme Court held that:

"Section 409 creates a privilege for compilations enumerated in the statute, but the privilege does not extend to reports and data gathered for or incorporated into such compilations." *Id.,* 627 So.2d at 173.

The rule in Louisiana seems to be that the facts are admissible if gathered from sources other than sources mentioned in Section 409. The federal courts have taken a similar position. In *Robertson v. Union Pac. R.R. Co.* (C.A.8, 1992), 954 F.2d 1433, 1435, the court held:

"We also conclude the court did not abuse its discretion by instructing appellant's expert witness, pursuant to 23 USC 409, to disregard information compiled or utilized by the Arkansas Highway Department in formulating his opinion. * * * We also believe that appellants suffered no prejudice by the district court's ruling because the expert witness was able to form an opinion and testify in court, without relying upon any data provided by the AHD. *He was able to do so based upon his own observations of the accident site and information he collected from the Federal Railroad Administration.*" (Emphasis added.)

In *Lusby v. Union Pacific RR. Co.* (C.A.8, 1993) 4 F.3d 639, the court applied the same rule despite the fact the expert said he could not evaluate the crossing's dangerousness without relying on Section 409 information. The court held that the statute precludes an expert from rendering an opinion in court based on materials that authorities compiled for the purpose of complying with the federal program of enhancing safety at crossings. Citing *Robertson, supra,* the court noted that an expert may rely on non-Section 409 data:

"Although the expert might have been able to generate similar data himself, *see Robertson,* 954 F.2d at 1435, he nevertheless impermissibly based his opinion on ATHD data." *Id.,* 4 F.3d at 641.

In the case *sub judice,* appellant's expert witness was Kenneth W. Heathington, a civil engineer. The trial court rejected Heathington's affidavit *in toto* on Section 409 grounds, even though many of the facts on which Heathington based his opinion were clearly not Section 409 material but generated, as per *Lusby, supra,* by his own independent examination. For example, in his affidavit Heathington said he based his opinion on such things as a personal examination of the site on April 3, 1991, data collected during the site evaluation, photographs, and a survey by Jack Meenach, a licensed surveyor from Chesapeake, Ohio. We find that the trial court erred by holding that Section 409 bars opinions based on each of these independent sources of data.

Heathington also relied on a police accident report, the Pike County Sheriff's accident report, and the N & W timetable for the train involved in the accident. Although none of these are Section 409 reports, Paragraph II, part H, of

Heathington's affidavit states that his expert opinion is based in part on "Computer printout from the Federal Railroad Administration (FRA) national inventory data for the crossing." In *Robertson, supra,* the court held that a party is not prejudiced by the constraints of Section 409 because an expert is able to base an opinion " \* \* \* upon his own observations of the accident site and information he collected from the Federal Railroad Administration." Since *Robertson* specifically allows opinions based on FRA information, we find the trial court in the case *sub judice* erred by barring Heathington's opinions.

Accordingly, based upon the foregoing reasons, we sustain appellant's second and third assignments of error.

We note, however, that during our consideration of appellant's fourth, fifth and sixth assignments of error, *infra,* we independently reviewed the entire record transmitted on appeal, including Heathington's opinions, and we concluded that the trial court correctly granted appellee's motion for summary judgment. Consequently, we need not remand the case for further proceedings.

### III

In her fourth assignment of error, appellant asserts the trial court erred by finding as a matter of law that appellee had no duty to install active warning devices at the crossing. In her fifth assignment of error, appellant asserts that the trial court erred by finding that appellant's decedent was the sole cause of the accident. We will discuss these two assignments of error together.

■ Initially, we note that summary judgment is appropriate when the movant demonstrates (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339–340, 617 N.E.2d 1123, 1126; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The moving party bears the burden of proving no genuine issue of material fact exists. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

■ When reviewing a summary judgment, an appellate court must independently review the record to determine if summary judgment was appropriate. An appellate court need not defer to the trial court's decision in summary judgment cases. See *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 599 N.E.2d 786.

A motorist and the engineer of a train owe each other a duty of care to avoid a collision. *Glick v. Marler* (1992), 82 Ohio App.3d 752, 613 N.E.2d 254; *Barger v. Chesapeake & Ohio Ry. Co.* (1990), 70 Ohio App.3d 307, 590 N.E.2d 1369. In *Matkovich v. Penn. Cent. Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652, syllabus, the court held that "a railroad has a duty of ordinary care to protect the safety of motorists." The Ohio General Assembly codified the motorist's duty in R.C. 4511.52, which requires motorists approaching railroad grade crossings to stop within fifty but not less than fifteen feet from the nearest rail when, *inter alia,* "an approaching train is plainly visible and is in hazardous proximity to the crossing."

In *Zuments v. B. & O. Rd. Co.* (1971), 27 Ohio St.2d 71, 72, 56 O.O.2d 40, 40, 271 N.E.2d 813, 814, the court required motorists approaching grade crossings to look and listen for trains:

"The driver of a motor vehicle about to pass over a railroad grade crossing on a public highway is required both to look and to listen for approaching trains, and the looking and listening must be at such time and place and in such manner as to be effective for that purpose. Where the uncontrovertible physical facts demonstrate that plaintiff's decedent did not so do, then such failure on his part was a proximate cause of the collision as a matter of law.  * * *"

In *Barger v. Chesapeake & Ohio Ry. Co.* (1990), 70 Ohio App.3d 307, 315, 590 N.E.2d 1369, 1374, the Tenth District noted that if a train's headlight might not be discernible due to other lights in the general vicinity, the motorist's duty to exercise care increases. In *Osborn v. Norfolk & Western Ry. Co.* (1990), 68 Ohio App.3d 85, 91, 587 N.E.2d 433, 437, the Third District noted that "the greater the difficulty of seeing in the conditions presented, the greater the duty of an automobile driver approaching a railroad crossing to exercise caution to discover danger, if any, under those circumstances." Similarly, in *Cates v. Conrail* (Jan. 18, 1995), Montgomery App. No. 14432, unreported, 1995 WL 19117, the Second District noted that if a motorist's view of a railroad crossing is obstructed, that circumstance "makes necessary the use of greater precaution on his part and renders his neglect to look or listen all the more culpable."

In the case *sub judice,* the parties submitted photographs of the crossing. Appellee contends the photographs demonstrate appellee met its duty of ordinary care to protect motorists using the crossing. Appellant contends the photographs demonstrate appellee did not meet its duty of ordinary care to protect motorists using the crossing. Neither party contests the accuracy of the photographs submitted by the other. We note that photographs of railroad grade crossings have been used in other summary judgment cases. See *Hicks v. Consol. Rail Corp.* (1993), 92 Ohio App.3d 636, 637 N.E.2d 19; *Newton v. Conrail* (Aug. 5, 1992), Hamilton App. No. C-910441, unreported, 1992 WL 188518; *Helton v.*

*Consol. Rail Corp.* (July 27, 1992), Butler App. No. CA91–12–211, unreported, 1992 WL 176481.

■ We find, as a matter of law, that the documentary evidence submitted by the parties in the case *sub judice,* including the photographs of the crossing, leave no doubt that the decedent, if he had been using ordinary care, would have had no difficulty observing the southbound train. We note that (1) the railroad right-of-way did not contain any vegetation or edifices obstructing the decedent's view of the train; (2) the decedent drove west sixty feet into the railroad right-of-way, completely over the northbound tracks, before he was struck by the train on the southbound tracks; (3) the accident occurred in broad daylight on a clear day; (4) the decedent had been to the area approximately ten times before the accident. In short, the train was plainly visible as it approached the crossing.

We acknowledge that appellant submitted documentary evidence, including a deposition and exhibits by appellant's expert witness, Dr. Kenneth Heathington, in an effort to demonstrate that the railroad grade crossing was extrahazardous. When we view that evidence in light of the photographs and other documentary evidence submitted in this case, however, we find no genuine issue of material fact.

Accordingly, based upon the foregoing reasons, we overrule appellant's fourth and fifth assignments of error and affirm the trial court's judgment.

## IV

In her sixth assignment of error, appellant asserts a genuine issue of material fact exists concerning whether appellee's employees on the train complied with the statutory requirement to sound an audible signal.

■ The engineer and the conductor both testified in their depositions that the train whistle was sounded as they approached the crossing. To counter this evidence, plaintiff offered the testimony of David Adams, a Carter Lumber employee, who said he did not hear the whistle. David Adams was inside the building when the crash occurred. He testified in pertinent part as follows:

"Q. Did you hear the train whistle before the crash?

"A. I honestly can't say I did because its something that just—after 23 years at it or whatever, those trains going by are second nature to me.

"Q. You can't swear that you heard it, can't swear that you didn't hear it?

"A. That's correct."

An almost identical summary judgment question was presented in *Barger v. Chesapeake & Ohio Ry. Co., supra,* the only difference being the accident in *Barger* was at night. In *Barger,* the Tenth District wrote:

"Appellant argues that he was placed in a position of danger because appellee failed to adequately warn him of the train's presence. Appellee offered four witnesses who stated that they heard the train give a warning sequence of whistles. Appellant offered *negative evidence* of a witness who did not hear the whistle prior to stopping at the crossing, and statements of others who did not hear a whistle on other occasions. Appellant has offered no rebuttal of appellee's evidence that a whistle was sounded at an interval sufficient to warn appellant other than a witness' statement that said he did not hear a whistle being sounded until two to three seconds before impact. The question is whether the negative statement of 'nothing heard' is sufficient to rebut the positive testimony of the train crew and independent witnesses who did hear the whistle in sufficient time for appellant to stop. We agree with the trial court that the failure-to-hear testimony was insufficient to create a jury case of appellee's negligence, particularly when the failure-to-hear testimony is further rebutted by the conclusive testimony that the train displayed a headlight that was discernible." (Emphasis added.) *Id.,* 70 Ohio App.3d at 314–315, 590 N.E.2d at 1373–1374.

We believe the Tenth District followed the proper standard in *Barger, supra,* and we do likewise.

Accordingly, based upon the foregoing reason, we overrule appellant's sixth assignment of error.

*Judgment affirmed.*

PETER B. ABELE, P.J., and STEPHENSON, J., concur.

GREY, Judge, dissenting.

I respectfully dissent. I agree with the majority opinion's treatment of the other assignments of error, but I would sustain appellant's fifth assignment of error and would remand this case for trial.

The trial court refused to consider the affidavit of plaintiff's expert witness, and therefore found that there was nothing in the record to demonstrate a genuine issue of law. Inasmuch as these evidentiary materials should have been considered, the trial court erred.

There is, in the record, sufficient evidentiary material which, when construed most favorably toward the plaintiff, creates a genuine issue of material fact.

The trial court held that the crossing was clearly marked, that the hazard was obvious and that Tardy was the sole cause of the accident. For example, the

court held that " * * * an approaching motorist, using ordinary care, could see and hear an approaching train and stop and yield the right-of-way." The majority opinion makes this same determination, and I frankly concede that this seems to be a very reasonable determination of what happened.

But while this is not an unreasonable determination, it is not the only determination which could be derived from the evidentiary materials filed in support and in opposition to the motion for summary judgment. Indeed, the very essence of plaintiff's claim is that although the crossing looks safe, it is deceptively dangerous. Plaintiff's expert testified that because the sight lines were not good, a driver approaching the crossing might not be able to observe the train's approach within time. If this is true, and under summary judgment standards it must be presumed so, a question of fact is created.

This court and the trial court have looked at photographs and determined that Tardy had a clear, unobstructed line of sight to the approaching train. This is, I believe a mistake, and perhaps the very same mistake that cost Tardy his life.

The testimony of the expert witness about the deceptive sight lines is not the only evidence on that question. The engineer, Kimberlain, testified that he could see peripherally and that he was looking down the track just before the accident, but that he did not see Tardy's car approach. He said: "The first I saw it, right there, right on the track." A reasonable inference is that if the engineer could not see the car approach, the driver could not see the oncoming train either.

I recognize that plaintiff's expert's version is not the only version of events which might be derived, but it does create a reasonable question of fact based on competing inferences. Where there are competing reasonable inferences, summary judgment is not appropriate. *Duke v. Sanymetal Products Co.* (1972), 31 Ohio App.2d 78, 60 O.O.2d 171, 286 N.E.2d 324. If the expert opinion testimony is considered in this case, reasonable minds could differ about what was the real cause of this accident and summary judgment is not proper.

That being the case, the grant of summary judgment was improper and I must dissent.