James H. **BICKLEY**, et al., Plaintiffs,

v.

**NORFOLK & WESTERN RAILWAY CO., Defendant.**

**No. 3:95CV7118.**

United States District Court, N.D. Ohio, Western Division.

Feb. 9, 1998.

Merritt W. Green, III, Nathan & Roberts, Toledo, OH, for Plaintiffs.

James R. Knepp, II, Jack Zouhary, Robison, Curphey & O'Connell, Toledo, OH, for Defendant.

Order

CARR, District Judge.

In this personal injury action, plaintiffs claim the defendant negligently caused plaintiff James H. Bickley's collision with a train at a railroad crossing. Because the parties are diverse and the amount in controversy exceeds $50,000,[1] this court has jurisdiction pursuant to 28 U.S.C. § 1332. Pending is defendant's motion for summary judgment. (Doc. 22). Plaintiffs filed an opposition, (Doc. 28), and defendant replied thereto. (Doc. 29). For the reasons that follow, defendant's motion shall be granted.

---

**1.** At the time plaintiffs' complaint was filed, the amount-in-controversy requirement under 28 U.S.C. § 1332 was $50,000.

## Background

On December 9, 1993, a clear, dry day, plaintiff James H. Bickley (Bickley) was driving a semi tractor-trailer on Portland Road, in Parkertown, Erie County, Ohio. Portland Road runs east and west, and intersects with defendant Norfolk & Western Railway Company's north-south railroad track in Parkertown. While there are cross-bucks, white roadway markings, and an advance warning disk at the Portland Road railroad crossing, as required by statute, there are no gates, flashing lights or stop signs.

Bickley approached the railroad crossing, an intersection that he had driven through many times before, from the west. He was traveling at an approximate speed of 45 miles per hour in a 55 mile-per-hour zone. Bickley stated that, although he looked in both directions—north and south—before driving through the railroad crossing, he did not see or hear the train approaching from the north until it was too late to stop before the tracks. Defendant's train, unable to stop in time to avoid an accident, collided with Bickley's truck. The train was traveling at an approximate speed of 25 miles per hour in a 40 mile-per-hour zone. As a result of this collision, Bickley suffered serious injury.

Bickley and his wife, Carol A. Bickley, filed a complaint against defendant, claiming that it: 1) negligently operated the warning devices on the train and 2) negligently failed to install extra-statutory warning devices at the railroad crossing.

## Discussion

Under Fed.R.Civ.P. 56(c), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Under this provision, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, once the moving party demonstrates that the nonmoving party's claims are unsupported, the burden shifts to the nonmoving party to introduce sufficient evidence to convince the court that a genuine issue of material fact exists. *Id.* at 250, 106 S.Ct. 2505. It is not sufficient that the nonmoving party merely deny the moving party's allegations and submissions; rather, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

As noted above, plaintiffs first claim that defendant negligently operated the warning devices on the train. The parties agree that, while snacks on the installation and adequacy of a train's warning devices are preempted by the federal law, *see Napier v. Atlantic Coast R.R. Co.*, 272 U.S. 605, 610–13, 47 S.Ct. 207, 71 L.Ed. 432 (1926), attacks on the negligent *use* of those devices are not preempted. Theoretically, then, a plaintiff can pursue a state-law negligence cause of action due to a defendant railroad's failure to properly use the warning devices on its locomotive.

Defendant offers the affidavits of Mary Trapp, who lives adjacent to the Portland Road crossing, and Glen Smith, engineer of defendant's train, as evidence that the train's warning whistle was blowing and that its headlight was on as it approached the accident location. Additionally, defendant points to Smith's statement that, after he saw Bickley approach and stop on the tracks, he placed the train in emergency.

■ Plaintiffs, on the other hand, have not called my attention to any evidence tending to prove that the defendant's employees negligently operated the train's warning and protective devices. Rather, plaintiffs cite to ¶¶ 10(h) and 10(i) of their complaint, which charge that defendant operated its train without the proper on train lighting, and failed to properly use the on train lighting that was available. To defeat a properly supported motion for summary judgment, the nonmoving party must point to specific facts in the record demon-

strating a genuine issue of fact, and cannot rest upon the mere allegations of its complaint. *See* Fed.R.Civ.P. 56(e). Therefore, plaintiffs' citation to its complaint to support its negligent operation claim does not suffice to create a triable issue as to defendant's negligent operation of the train's warning devices.

Plaintiffs second claim is based on their belief that defendant was negligent in not providing extra-statutory warning devices at the Portland Road crossing.

In *Hood v. New York, Chicago & St. Louis R.R. Co.,* 166 Ohio St. 529, 144 N.E.2d 104 (1957), the Ohio Supreme Court stated, at paragraph 6 of its syllabus, that "[a] railroad is under no duty to provide extrastatutory warnings at a grade crossing, where such warnings are not required by any order of the Public Utilities Commission, if there is no substantial risk that a driver in the exercise of ordinary care may be unable to avoid colliding with a train that is being operated over the crossing in compliance with statutory requirements." In deciding what precautions are required of it, a railroad is entitled to assume that motorists driving over the crossing will exercise ordinary care. *Id.* 535–36, 144 N.E.2d 104 (*citing New York, Chicago & St. Louis R. Co. v. Kistler,* 66 Ohio St. 326, 64 N.E. 130 (1902)). Thus, unless there is a substantial risk that a driver using ordinary care will not be able to avoid a collision at the crossing, the crossing is not extra-hazardous, and the railroad does not need to provide extra-statutory warnings.

The Ohio Supreme Court again addressed this issue in *Matkovich v. Penn Central Trans. Co.,* 69 Ohio St.2d 210, 431 N.E.2d 652 (1982). The *Matkovich* Court stated in its syllabus that a railroad has a duty of ordinary care to protect the safety of motorists. While *Matkovich* alluded to the extra-hazardous nature of the crossing involved, it was not a typical "extra-hazardous" crossing case, and the Court did

not find the crossing to be an extra-hazardous one. Rather, *Matkovich* involved a non-hazardous crossing that was made hazardous when the railroad parked its cars across the tracks at night without warning oncoming motorists of their presence. The Court found that the railroad defendant violated its duty to use ordinary care when, without any warnings, it parked the train cars on the crossing, a crossing that normally had little train traffic.

The Sixth Circuit has recently reaffirmed Ohio's long-standing rule regarding a railroad's duty toward motorists of particularly dangerous crossing. In *Hostetler v. Consolidated Rail Corp.,* 123 F.3d 387, 393 (6th Cir.1997), the Court found that, "under Ohio law, a railroad has a duty to use ordinary care to protect the safety of motorists. The duty to use ordinary care may require extra-statutory signals if the crossing is 'extra-hazardous.'" The *Hostetler* Court also reconciled the apparently divergent holding in *Hood* and *Matkovich:*

> [W]e find that *Hood* and *Matkovich* are complementary. Both ... provide that the duty of the railroad is to use ordinary care. The test under *Hood,* not altered by *Matkovich,* is whether there is a substantial risk that a driver in the exercise of ordinary care—that is, one who effectively looks and listens at a point where such action would determine the presence of a train—would be unable to avoid colliding with a train being operated over the particular crossing in compliance with statutory and commission regulations. The railroad's duty is to exercise ordinary care, which, in any given case is defined by the nature of the crossing at issue. *Matkovich* merely makes clear that in making this determination we look at all the circumstances present; we consider whether the crossing is "extra-hazardous" (the issue in *Hood* ), as well as any other particularly dangerous conditions created or permitted by the railroad.[2]

2. The *Hostetler* Court also expressly declined to adopt an earlier, unpublished Sixth Circuit opinion,*Geraci v. Consol. Rail Corp.,* 1995 WL 696735 (6th Cir. Nov.20, 1995), in which a panel of the Court held that *Matkovich* replaced the syllabus rule stated in *Hood.*

*Accord Springston v. Consolidated Rail Corp.,* 130 F.3d 241, 246 n. 1 (6th Cir.1997).

Thus, the relevant issue in this case is whether the crossing at Portland Road was extra-hazardous such that defendant was negligent in not providing additional warning devices beyond those required by statute. In determining whether the crossing was especially hazardous, it must be determined whether Bickley, in the exercise of ordinary care, would have been unable to avoid the collision.

In support of their claim that the crossing was extra-hazardous, plaintiffs submit the affidavit of William Berg, who specializes in the field of rail-highway safety and accident reconstruction.[3] Berg concludes that the Portland Road railroad crossing is extra-hazardous. This conclusion is based on Berg's findings that (1) the vehicle-train accident rate at this crossing is substantially above average; (2) visibility in the southwest and northwest quadrants is obstructed by vegetation, buildings and the angle of the crossing; and (3) other "critical" factors exist, such as the "hump roadway profile" and the high volume of trucks using the crossing. Berg also claims to have investigated Bickley's accident, and found that sight obstruction and "competency task load associated with the roadway geometry and the adjacent driveway entrances" were "causal factors associated with his late detection of the train."

The first two factors relied upon by Berg—the high accident rate and the obstructed view—are unhelpful to a jury and inadmissible as evidence.

 Berg first states that the expected vehicle-train accident rate at the Portland Road crossing is one accident every seven years, but that, in 1985 through 1992, there was an average of one vehicle-train accident every three years. This testimony, though interesting, is actually irrelevant. Evidence of prior accidents is admissible only to the extent that they are similar to the accident at issue. Because

plaintiffs demonstrate no basis on which this court should believe those accidents to be sufficiently similar to Bickley's, Berg's reliance on them is insufficient to raise a genuine issue of fact.

Defendant's response to the second factor relied on by Berg—the obstructed view in the northwest and southwest quadrants—renders it unreliable as a basis for a jury decision. Berg's affidavit states that visibility was obstructed in both quadrants, and then goes on to say that minimum sight distance requirements could only have been met if train speeds did not exceed 19 miles per hour. Significantly, he does not explain whether this 19–mile-per–hour limit applies to the northwest or southwest quadrant, or both. The explanation is given, however, in an exhibit proffered to Judge Kate of this court, who heard a case involving a eastbound car/northbound train accident at the same intersection. *See* Doc. 29, Ex. B. There, Berg's notes state that the 7–19 m.p.h. limit applies to visibility in the southwest quadrant, where the railroad and the road meet at an acute angle, while a less drastic 27–30 m.p.h. limit applies to visibility in the northwest quadrant, where the angle is obtuse. It is undisputed that defendant's train was traveling approximately 25 m.p.h. Berg's notes, along with the failure of his affidavit to specify whether the safe train speed of less than 19 m.p.h. applies to the northwest quadrant, render his opinion about the hazardous nature of the Portland Road crossing suspect.

Finally, Berg states that the crossing was rendered extra-hazardous by virtue of the roadway's "hump profile" and heavy truck traffic in the area. I fail to understand how either of these factors, standing alone, as they now must, could lead a reasonable jury to find that the crossing was extra-hazardous, especially in light of the photographs and affidavits submitted by defendant.

---

**3.** Berg was qualified as an expert before Judge Katz of this court in a case involving an

accident at the same railroad crossing.

■ Even were I to accept the Berg's findings, I would still be compelled to find that, based on other evidence in the record, a reasonable jury could not believe that the crossing was extra-hazardous under Ohio law. The decision in *Hood* teaches that, before a crossing can be considered extra-hazardous, it must be established that a driver using ordinary care would not be able to avoid a collision at that crossing. There is no evidence, other than Berg's unpersuasive visibility and train speed figures, to show that a driver using ordinary care could not have avoided a collision. Indeed, Berg never concludes that Bickley could not have avoided the accident, and all indicators point to negligence on Bickley's part.

■ Moreover, the photographs submitted by defendant refute any claim that a motorist who properly looked and listened would be unable to avoid a collision. "If, from photographs of the accident site, a jury might reasonably conclude that the crossing was so obstructed by trees and bushes that it was more dangerous than the usual rural crossing, there is sufficient evidence on the question of whether the crossing was extra-hazardous to permit that issue to go to the jury." *Hicks v. Consolidated Rail Corp.*, 92 Ohio App.3d 636, 639, 637 N.E.2d 19 (Clermont Cty. 1993) (*citing Stoler v. Penn Cent. Transp. Co.*, 583 F.2d 896, 898 (6th Cir.1978)). Here, however, the photographs demonstrate a clear view of the railroad tracks and an ability to see any southbound oncoming trains from at least 85 feet from the crossing.[4] *See Cates v. Consolidated Rail Corp.*, 100 Ohio App.3d 288, 298, 653 N.E.2d 1229 (Montgomery Cty.1995) (plaintiff had a clear, unobstructed view of the tracks from seventy-five feet north of the railroad track and, if he had used ordinary care, he could have avoided the collision).

Additionally, the affidavit of Kimberly Schubert, who was driving her car behind Bickley at the time of the accident, further supports defendant's contention that visibility was not obstructed: Schubert testified that she saw the train coming from about two car lengths behind Bickley, and had time to stop and back up before it reached the intersection.

Plaintiffs also submit a January 14, 1993, letter signed by twenty-five Norfolk & Southern Railroad employees, alerting the Public Utilities Commission of Ohio (PUCO) to the dangerous nature of the Portland Road crossing, and requesting that additional warning devices, including gates and/or crossing lights, be installed. Plaintiffs submit this letter in support of their punitive damages claims, as proof that defendant acted with conscious disregard of a known risk. The letter, however, supports defendant's claim that it was not negligent: the PUCO's failure to act demonstrates that it did not believe the Portland Road crossing to be a particular danger to motorists. As such, the letter belies plaintiffs' claim that defendant acted negligently. *See Cates,* 100 Ohio App.3d at 298, 653 N.E.2d 1229 (basing its finding that crossing was not extra-hazardous in part on lack of evidence that the PUCO found it dangerous enough to require additional protective devices); *Perrault v. Norfolk & Western Ry. Co.,* 82 Ohio App.3d 752, 757, 613 N.E.2d 254 (Hamilton Cty. 1992) (same).

This case is similar to *Tardy v. Norfolk Southern Corp.,* 103 Ohio App.3d 372, 381, 659 N.E.2d 817 (Pike Cty.1995), in which the granted summary judgment where:

[T]he documentary evidence submitted by the parties in the case sub judice, including the photographs of the crossing, leave no doubt that the decedent, if he had been using ordinary care, would have had no difficulty observing the southbound train. We note that (1) the railroad right-of-way did not contain any vegetation or edifices obstructing the de-

4. Although defendant does not indicate the time of year when the photographs were taken, I find it difficult to imagine that the view would have been more obstructed by vegetation on December 9, when the accident happened.

738

cedent's view of the train; (2) the decedent drove west sixty feet into the railroad right-of-way, completely over the northbound tracks, before he was struck by the train on the southbound tracks; (3) the accident occurred in broad daylight on a clear day; (4) the decedent had been to the area approximately ten times before the accident. In short, the train was plainly visible as it approached the crossing.

We acknowledge that appellant submitted documentary evidence, including a deposition and exhibits by appellant's expert witness, Dr. Kenneth Heathington, in an effort to demonstrate that the railroad grade crossing was extrahazardous. When we view that evidence in light of the photographs and other documentary evidence submitted in this case, however, we find no genuine issue of material fact.

Based on a review of the photographs, the witness affidavits and the unsupported conclusion of defendant's expert, reasonable jurors could not come to the conclusion that Bickley, if he had exercised due care, could not have avoided a collision at the Portland Road crossing. Therefore, the crossing cannot be deemed extra-hazardous, and defendant, under *Hood,* is not negligent by virtue of its failure to install extra-statutory warning devices.

### Punitive Damages

 An award of punitive damages requires that the plaintiff show that the defendant acted with hatred, ill will or spirit of revenge, or exhibited "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty,* 32 Ohio St.3d 334, 334, 512 N.E.2d 1174 (1987). Conscious disregard, as developed in Ohio railroad accident cases, is "a failure to exercise any care whatsoever by those who owe a duty of care" occurring "under circumstances in which there is great probability that harm will result from the lack of care." *Matkovich v. Penn Central,* 69 Ohio St.2d 210, 212, 431 N.E.2d

652 (1982) (*citing Hawkins v. Ivy,* 50 Ohio St.2d 114, 363 N.E.2d 367 (1977)).

Because I have found that defendant did not act negligently in connection with Bickley's accident, plaintiffs are precluded from recovering punitive damages.

### Conclusion

Plaintiffs fail to raise a genuine issue of material fact as to defendant's negligent operation of the warning devices on its train. In addition, because there is no admissible evidence in the record sufficient to support plaintiff's claim that the Portland Road grade crossing was "extra-hazardous," as that term is defined by Ohio courts, there is no triable issue of fact on which a jury could find that defendant's failure to install extra-statutory warning devices at the crossing was negligent. Plaintiff's claims are therefore dismissed in their entirety.

Accordingly, it is hereby

**ORDERED THAT** defendant's motion for summary judgment, (Doc. 22), be, and same hereby is, granted.

**So ordered.**