DECISION AND JUDGMENT ENTRY
This case is before the court following a jury trial which found in favor of appellee, Beverly E. Ekholm, deceased.[1] The jury returned a verdict of $422,775 for Ekholm, but also found her to be forty-five percent negligent thereby reducing her judgment to $232,526.25.
The facts of this case are as follows. On March 17, 1999, at approximately 9:00 p.m., six to eight employees of appellant, Willis Day Moving and Storage Company ("Willis Day"), had completed a residential move on West River Road in Perrysburg, Wood County, Ohio. A Willis Day employee, appellant Gregory W. Paseff, was slowly backing the semi-tractor trailer out of the driveway. Because the truck was already in the roadway, a motorist in appellee's opposite lane of travel was stopped with his headlights on. A Willis Day pack van was also parked on the same side of the road with its headlights on. At least one Willis Day employee was acting as a spotter for Paseff and watching for oncoming traffic.
Ekholm was traveling on West River Road at approximately forty to forty-five m.p.h., when she saw two stopped vehicles on the opposite side of the road. Ekholm slammed on her brakes but was unable to avoid a collision with the trailer. Ekholm suffered a right talus fracture.
On July 28, 1999, appellee commenced the instant action. An amended complaint was filed on June 22, 2000. The complaint alleged that appellant, Gregory Paseff, while acting within the course and scope of his employment with Willis Day, failed to exercise reasonable care in operating the semi-tractor trailer. Appellee further claimed that Willis Day failed to equip its vehicle and drivers with the proper warning devices and failed to properly train and instruct Paseff in how to safely perform a backing maneuver.
The trial on this matter commenced on January 29, 2001, and concluded on February 1, 2001. The jury found that appellants were fifty-five percent negligent and that appellee was forty-five percent negligent. Appellants then filed a timely notice of appeal.
Appellants now raise the following eight assignments of error:
"Assignment of Error 1:
 "The Trial Court erred when it allowed the testimony of Appellee's expert to testify that Appellants should have used retro-reflective tape on their truck even though there was no legal requirement for such tape in existence at the time of the accident. Further, the Trial Court erred by allowing this expert to establish a trucking industry standard when he had no direct knowledge of any such standard other than through hearsay. Tr. Vol. II Pgs. 81-82, 73-76.
"Assignment of Error 2:
 "The Trial Court erred in refusing to give a properly requested jury instruction with respect to speculation as to warning devices as requested by Appellants. Tr. Vol. IV, pg. 142.
"Assignment of Error 3:
 "The Trial Court erred by denying Appellants' objection when Appellee attempted to bolster the credibility of one medical expert by another medical expert and then granted Appellee's objection and ordered the testimony of Appellants' accident reconstruction expert which bolstered the credibility of Appellants' lighting expert to be stricken. Further, the Trial Court erred when it refused to strike the statements of Appellee's counsel to Appellee's treating physician regarding the doctor's excellent care and expertise. Peoples Depo. pg. 41; Tr. Vol. IV, pgs. 87-88; Salpietro Depo. pg. 90. Further an expert cannot be permitted to bolster his own credibility by introducing hearsay comments. Tr. Vol. II, pg. 53.
"Assignment of Error 4:
 "The Trial Court erred by allowing testimony concerning the results of a driving test that was performed by Appellants four (4) years prior to the accident. Tr. Vol. III, pgs. 237-239.
"Assignment of Error 5:
 "The Trial Court erred in redacting letters from Appellee's counsel to Appellee's accident reconstruction expert concerning the expert's ability to reconstruct the accident. Tr. Vol. IV, pgs. 104-105.
"Assignment of Error 6:
 "The Trial Court erred by admitting into evidence a consultation report of a non-testifying doctor without proper authentication and foundation. Salpietro Depo. pgs. 25-26; Peoples Depo. pgs. 36-37; Tr. Vol. III, pg. 182.
"Assignment of Error 7:
 "The Trial Court erred in allowing the testimony of Appellee's treating physician that in a worst case scenario, which would include uncontrollable infection following a future surgery, Appellee's injuries could lead to an amputation of her foot. Salpietro Depo. pgs. 87-88.
"Assignment of Error 8:
 "The Trial Court erred by allowing Appellee's medical expert to testify to the reasonableness and necessity of medical bills submitted in a composite exhibit when such expert testified that he had not reviewed every bill, and that he did not know what treatment many of the bills even represented. Tr. Vol. III, pg. 185."
 FIRST ASSIGNMENT OF ERROR
Appellants' first assignment of error argues that the trial court improperly permitted appellee's expert to testify regarding certain trucking industry standards and give testimony as to compliance with a federal regulation that was not in effect at the time of the accident.
During trial, Ekholm's expert, Jim Sobek, testified as to the lighting conditions at the time of the accident, in particular, poor visibility. Sobek testified that the street itself was dark and unlit and that the crest and curve of the road combined with the headlights of the vehicles stopped in the opposite lane of travel could have caused a glare which obstructed appellee's vision.
Sobek also testified regarding retroreflective tape used on trucks for safety purposes. Sobek testified that every truck trailer of a certain length and weight manufactured on or after December 1, 1993, was required to have the retroreflective tape in place at the time of assembly. Sobek did note that at the time of the accident Willis Day was not required to have retroreflective tape on its trailers.
Sobek was questioned as to the current use of retroreflective tape in the trucking industry. He explained his basis of knowledge as follows:
 "THE WITNESS: I know by both from my own personal driving as I spent some time on the road, but also from a number of publications that have been addressing whether or not this tape has been effective in the world and what the current status is of the trailer population on the road as to how many have been taped and how many have not yet."
Sobek admitted that he was not part of the trucking industry but stated:
 "* * * I do spend time speaking with people who are in it and run trucking businesses. We have trucking experts on staff and I will go with them and I have done talks to people in the trucking industry about the benefits of using this. And I have then gone back to those people that have been in those talks to find out what they have done and what degree — how many of their trucks they have done. Over time I have contacted one company several times to see what they had done and they have done all of them."
Following the above testimony, appellants' counsel objected on hearsay grounds. The objection was sustained. Sobek then testified as to specific companies that he personally observed retrofitting their trailers with the tape.
As to the truck involved in the present case, Sobek was asked whether it had retroreflective tape. Sobek answered negatively but noted that the trailer had a red reflector at the back and an amber one in the center. He indicated that the portions of the trailer with the reflectors were not yet on the road when appellee was approaching and that the trailer was backing out at an angle. Sobek further stated that retroreflective tape would work at such an angle.
Finally, Sobek gave his opinion, over objection, that Willis Day should have fitted its trailer with retroreflective tape based on the fact that the trucks sometimes operate at night at "unexpected," i.e. private residential, locations. He indicated that the tape would have been a "huge safety benefit for a very minimal cost."
We first note that the admission or exclusion of evidence rests in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173,180. In order to find an abuse of discretion we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
Appellants contend that the trial court erroneously permitted Sobek to testify regarding retroreflective tape which was not federally mandated until June 2001. In response, appellee argues that while compliance with state or federal regulations is certainly a factor to be considered by a jury, such adherence may only establish a minimum duty of care. In support, appellee cites Matkovich v. Penn Central Transp. Co. (1982),69 Ohio St.2d 210.
In Matkovich, appellant was operating a motorcycle at night and collided with a train blocking the road. Appellant was aware of approaching railroad tracks as well as the yellow warning sign but he had never seen a train stopped at the crossing. Id. at 211. The appellate court found that the railroad company was not guilty of wanton misconduct.
Reviewing the appellate court's findings, the Supreme Court of Ohio acknowledged that prior case law held that a train rightfully occupying a track at a crossing was in itself sufficient notice. Id. at 212. Nevertheless, the court found:
 "The concept of a train serving as notice may have been reasonable decades ago when this standard was formulated. However, we must determine whether the train constituted actual notice of the hazard under the circumstances in this case. The train itself had no reflective tape, and the record reflects that the jury could have reasonably found that no warning devices were used by the railroad at the crossing. Considering the darkness of the night and of the train and the normal rate of speed of today's motor vehicles, appellant may not have had sufficient time to stop and avoid the collision after it became evident to him that the train blocked the road ahead. Therefore, we conclude that the train may not have been perceived at a sufficient distance to serve as notice. Penn Central had a duty to exercise ordinary care to protect the public safety and in this case that duty required giving additional warning of the presence of the train." Id. at 213.
In the present case, as in Matkovich, we find that expert testimony relative to safety devices that could have been and are commonly used was relevant to the question of whether appellants breached the duty of ordinary care. Thus, we find that the trial court did not err in allowing such testimony. We further find that, based upon our review of the testimony, appellee's expert was closely aligned and familiar with the trucking industry to have personal knowledge of commonly used safety devices. Accordingly, appellants' first assignment of error is not well-taken.
 SECOND ASSIGNMENT OF ERROR
In appellants' second assignment of error, they argue that the trial court erred in refusing to give a jury instruction, instructing the jury not to speculate that the use of additional warning devices would have changed the outcome of the accident.[2]
The purpose of the jury charge is to clearly and concisely state the principles of law necessary for the jury to accomplish the purpose desired. Cleveland Elec. Illum. Co. v. Astorhurst Land Co. (1985),18 Ohio St.3d 268, 272. "A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled that jury in a matter materially affecting the complaining party's substantial rights." Becker v. Lake Cty. Mem. Hosp. West (1990),53 Ohio St.3d 202, 208. The decision to include or exclude a particular instruction is generally within the sound discretion of the trial court.Cabe v. Lunich (1994), 70 Ohio St.3d 598, 602.
In support of their argument, appellants rely on the Tenth Appellate District case captioned Slavick v. Ohio Dept. of Transp. (1988),44 Ohio App.3d 19. In Slavick, the appellant was operating his motor vehicle in a construction zone where the solid yellow line denoting a no-passing zone had been removed. The vehicle in front of him was not traveling the posted speed limit so, after determining it was safe to pass, appellant pulled alongside the vehicle in order to pass and was struck head on by a vehicle that had been hidden by a "dip" in the road.Id. at 19-20. Following a bench trial, the Slavick court found that appellant was negligent and that his actions in passing the vehicle proximately caused the accident. Id. at 21. The court further found that the state had a duty to exercise ordinary care to keep the highway free from obstructions and defects; however, the state was not negligent because there was no statute requiring it to place markers warning of the no-passing zone. Id.
On appeal, appellant raised as his third assignment of error, the argument that the trial court erroneously determined that it was mere speculation as to whether appellant would have seen and heeded the proper traffic control devices. Id. at 24. The court rejected appellant's argument, stating: "[N]either this court nor any other court can determine what actions [appellant] would or would not have taken had the appropriate markings been in place * * *." Id. at 25. The court further explained: "The fact that [appellant] had proceeded lawfully prior to his passing the vehicle must be weighed against appellee's failure to properly mark the roadway in determining which party's negligence was more responsible for the accident." Id.
The Slavick court then found well-taken appellant's fourth assignment of error relative to the trial court's determination that appellant was negligent and his negligence was the proximate cause of the accident. The court reasoned that while appellant was negligent in passing a motor vehicle when the left side of the roadway was not free from oncoming traffic, appellee was also negligent in failing to properly mark the road and failing to warn of the hazardous condition. Id. The court then remanded the case for a comparative negligence determination. Id.
In the present case, the trial court refused to give the instruction at issue because the judge believed that instructions as to ordinary care and custom and usage were sufficient. Upon review, we cannot say that the trial court abused its discretion in so finding. The testimony presented by appellee's expert, Jim Sobek, was purely in regard to visibility, whether the truck would have been more visible with retroreflective tape. Sobek did not testify that appellee would have seen the tape and avoided the collision. As in Slavick, the jury was asked to determine whether appellee was negligent in failing to maintain assured clear distance and/or whether appellants were negligent by failing to warn of their presence in the road. Accordingly, appellants' second assignment of error is not well-taken.
 THIRD ASSIGNMENT OF ERROR
Appellants' third assignment of error concerns alleged instances of improper bolstering of expert credibility through hearsay and counsel. We shall address each alleged instance in the order presented.
Appellants first contend that appellee's expert, Jim Sobek, was improperly permitted, over a hearsay objection, to testify that he received notice from the National Traffic Safety Administration ("NTSA") that his comments had led to the final adoption of the federal regulation regarding retroreflective tape.
Decisions concerning the admission of evidence are within the discretion of the trial court and will not be reversed absent an abuse of discretion. Bostic v. Connor (1988), 37 Ohio St.3d 144. As stated above, an abuse of discretion is more than a mere error of law or judgment, it implies an arbitrary, capricious or unconscionable attitude on the part of the trial court. Blakemore v. Blakemore,5 Ohio St.3d at 219. Further, Evid.R. 103(A) states that an error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected.
Assuming that the testimony relative to the NTSA letter was hearsay and improperly admitted, appellants, other than a blanket assertion, have failed to demonstrate prejudice as required under Evid.R. 103(A). Upon review of his testimony, Sobek presented ample testimony that he was a qualified expert regarding visibility issues in automobile accident cases. His reference to the letter was certainly not essential to establishing his credibility.
Appellants next contend that appellee was permitted, over objection, to use the testimony of one expert to bolster the credibility of appellee's treating physicians. Dr. Richard Peoples testified, by deposition, as follows:
 "Q: Are these doctors respected physicians in their field of orthopedics in Toledo, Ohio?
"A: Yes.
 "Q: You certainly have no reason today to question their competence or integrity as it relates to their care and treatment of Beverley Ekholm, do you?
"A: No."
While the above testimony does appear to be somewhat bolstering of appellee's treating physicians credibility, the comments do not rise to the level of the stricken testimony of appellants' expert, David L. Uhrich, Ph.D., who testified that appellants' lighting expert was the "best visibility guy in the state." Further, on review of the arguments of the parties, we cannot say that appellants were prejudiced by such testimony.
Appellants further argue that the statement by appellee's counsel at the end of Dr. Salpietro's trial deposition, thanking Dr. Salpietro for the excellent care and expertise in appellee's case, was improper bolstering. Upon review of Dr. Salpietro's trial deposition and mindful of the fact that the jury had been admonished that statements of counsel are not evidence, we find that any error in the admission of counsel's statement was harmless. Based on the foregoing, we find appellants' third assignment of error not well-taken.
 FOURTH ASSIGNMENT OF ERROR
Appellants, in their fourth assignment of error, challenge the trial court's ruling allowing cross-examination of Stephen T. Day, president of Willis Day, regarding the results of appellant Paseff's driving test taken four years prior to the accident. Appellee contends that the issue of Paseff's driving ability, which included the span of four years prior to the accident, was specifically raised during direct examination of Day and was therefore an appropriate subject during cross-examination. We agree.
During direct examination Day indicated that he felt that Paseff was the best driver he had. Day then testified as follows:
 "Q: Did you have any involvement? Did you have an opportunity to ever see him drive a truck?
 "A: I gave — when he was hired, I did give him the written test which was required at that time and he also performed the driving skill test which is a driving test approximately 50 miles."
Because appellants raised the issue of Paseff's driving ability, including a direct reference to the driving test, the trial court did not err when it permitted appellee's counsel to cross-examine Day as to the results of such test. Accordingly, appellants' fourth assignment of error is not well-taken.
 FIFTH ASSIGNMENT OF ERROR
Appellants' fifth assignment of error argues that the trial court erroneously redacted information in a letter from appellee's counsel to expert Sobek in which appellee's counsel expressed some concerns regarding Sobek's ability to reconstruct the accident. Appellee contends that despite the fact that appellee's counsel, a layperson, expressed some personal concerns about Sobek's credentials, such concern was not probative evidence and any value in its admission was outweighed by the danger of unfair prejudice.
Upon consideration, we agree that the probative value of appellee's counsel's personal concerns do not outweigh the danger of unfair prejudice under these specific facts. Sobek was questioned as to the substance of the letter and, when asked, admitted that he was not a certified accident reconstructionist. The admission of the letter into evidence, after Sobek had been qualified as a visibility expert, would have risked confusing the jury and leading them to unfairly discount his testimony. Appellants' fifth assignment of error is not well-taken.
 SIXTH ASSIGNMENT OF ERROR
Appellants allege that the trial court erroneously permitted the report of a non-testifying physician to be admitted into evidence. Specifically, during trial two physicians, Dr. Richard Peoples and Dr. Benjamin Salpietro, Jr., presented testimony through videotaped depositions. During their trial depositions, each was requested to read into the record the opinions and diagnosis of Dr. Thomas O'Hara, Jr., from a consultation report. This report was admitted into evidence at the close of appellee's case-in-chief.
Appellants argue that the Dr. O'Hara's report is inadmissible hearsay. Evid.R. 803(6) provides the following exception to the general rule that hearsay is inadmissible:
 "Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."
The staff note to Evid.R. 803(6) states, in part:
 "The Ohio rule departs from the Federal Evidence Rule by deleting `opinions and diagnoses' as admissible under this section. It is not clear how far the present Ohio law permits such evidence to be admitted. In Hytha v. Schwendeman (1974), 40 OApp2d 478, 69 OO2d 419, 320 N.E.2d 312, the Franklin County Court of Appeals set forth seven criteria for a diagnosis to be admissible when contained in a hospital record. The Hytha case may retain validity in so far as it may assist in determining the point at which, in medical records, an act, event or condition admissible under the exception becomes an impermissible opinion or diagnosis under the rule."
As stated in the staff note, Hytha v. Schwendeman (1974),40 Ohio App.2d 478, sets forth seven factors which must exist in order for a record of a medical diagnosis to be admitted into evidence. The factors include:
 "(1) The record must have been a systematic entry kept in the records of the hospital or physician and made in the regular course of business;
 "(2) The diagnosis must have been the result of well-known and accepted objective testing and examining practices and procedures which are not of such a technical nature as to require cross-examination;
 "(3) The diagnosis must not have rested solely upon the subjective complaints of the patient;
 "(4) The diagnosis must have been made by a qualified person;
 "(5) The evidence sought to be introduced must be competent and relevant;
 "(6) If the use of the record is for the purpose of proving the truth of matter asserted at trial, it must be the product of the party seeking its admission;
"(7) It must be properly authenticated."
Upon review of the Hytha factors, we find that the trial court erred in admitting the disputed testimony of Drs. Peoples and Salpietro, and the consultation report of Dr. O'Hara. There is no proper foundation that the report was created according to the regular business practices of Dr. O'Hara. Further, much of the eight-page report is subjective in that it repeats appellee's description of her back pain. In addition, we note the absence of testimony establishing the qualifications of Dr. O'Hara.
Pursuant to Evid.R. 103(A), we further find that appellants were prejudiced by the error. As part of Dr O'Hara's diagnosis he states in part: "FRACTURE OF THE RIGHT TALUS WITH RESULTING GAIT ABNORMALITY, PROBABLY CAUSING LOW BACK AND LEG PAIN." As argued by appellants, the issue of low back pain was a significant issue and appellee testified as such. Moreover, the eight-page report was the only medical report submitted into evidence and before the jury. Accordingly, appellants' sixth assignment of error is well-taken.
 SEVENTH ASSIGNMENT OF ERROR
In this assigned error, appellants argue that appellee's treating physician, Dr. Salpietro, was improperly permitted to testify with respect to a worst case scenario. Specifically, Dr. Salpietro testified that while he would not be performing the surgery, appellee would probably need a surgery known as a fusion of which, the worst possible result could be an uncontrollable infection possibly resulting in an amputation of her foot.
Upon review, we do not find it error to testify as to a worst case scenario when the surgery would in all likelihood be necessary. Dr. Salpietro also testified regarding the standard risks of the surgery and that he had performed fusion surgeries in the past.
Moreover, even assuming that such testimony was improper, it did not result in prejudice. As appellee notes, the jury awarded only $20,000 for future medical expenses, $100,000 for future pain and suffering, and $50,000 for future loss of enjoyment of life. Appellants' seventh assignment of error is not well-taken.
 EIGHTH ASSIGNMENT OF ERROR
In appellants' eighth and final assignment of error, they dispute the admission of testimony relative to the reasonableness and necessity of bills of other medical providers. Specifically, Dr. Salpietro testified regarding bills generated by his office and by other physicians and entities that rendered treatment to appellee.
Under R.C. 2317.421, medical bills are,
 "if otherwise admissible, [ ] prima-facie evidence of the reasonableness of any charges and fees stated therein for medication and prosthetic devices furnished, or medical, dental, hospital, and funeral services rendered by the person, firm, or corporation issuing such bill or statement, provided, that such bill or statement shall be prima-facie evidence of reasonableness only if the party offering it delivers a copy of it, or the relevant portion thereof, to the attorney of record for each adverse party not less than five days before trial."
Interpreting R.C. 2317.421, the court, in Rimsky v. Snider (1997),122 Ohio App.3d 248, found that the trial court did not err in allowing testimony by the attending physician as to various medical bills submitted by providers that had not testified at trial. The physician indicated that the bills were reasonable and necessary but noted that such bills were not part of his records and that he could not testify as to how other providers prepared their bills. Id. at 252. The court then concluded that the bills were properly admitted and the weight to be given then was properly left to the jury. Id. at 254.
In the instant case, as in Rimsky, Dr. Salpietro testified that the bills were reasonable and necessary and were incurred as a result of the March 17, 1999 accident. Accordingly, we cannot say that the trial court erred in permitting such testimony. Appellants' eighth assignment of error is not well-taken.
On consideration whereof, we find that substantial justice was not done the party complaining, and the decision of the Wood County Court of Common Pleas is reversed and remanded for proceedings consistent with this decision. Court costs are assessed to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Melvin L. Resnick, J., and Mark L.Pietrykowski, P.J., CONCUR.
[1] Beverley E. Ekholm died during the pendency of this appeal. On January 11, 2002, we granted appellee's motion to substitute as appellee Timothy Martin DeVries, Executor of the Estate of Beverly E. Ekholm. To avoid confusion, when referring to appellee, we shall be referring to Beverly Ekholm.
[2] The entire instruction requested by appellants reads as follows:
"Speculation as to Warning Devices
 "Although a driver may presume that another driver will obey traffic control devices, no individual may presume that a driver would have responded to any particular traffic control device in any specific manner. In other words, to say that if additional signs, markers, or devices had been used to warn oncoming traffic, they would have been seen or would have been heeded is mere speculation and should not be used in your determination. Absent direct proof, it is pure speculation that anything would have been done differently regarding an individual's response had any particular safeguard been used. Speculation is not admissible evidence."
"Authority: Slavick et al. v. State of Ohio (Franklin Cty. 1988),44 Ohio App.3d 19; Vermott [sic.] et al. v. Fred Christen Sons Co. etal. (Lucas County 2000), No. L-99-1166, 2000 Ohio App. LEXIS 3827"